Argued and submitted November 10, 1998, decision of Court of Appeals affirmed in part and reversed in part, order of circuit court reversed, and case remanded to circuit court February 26, 1999

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# JACKIE ARLIS GOODMAN,
*Respondent on Review.*

## (CC 95CR2733FE; CA A91979; SC S45026)

975 P2d 458

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for petitioner on review. On the petition for review were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General.

Dan Maloney, Deputy Public Defender, Salem, argued the cause for respondent on review. With him on the brief on the merits was Sally L. Avera, Public Defender.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

RIGGS, J.

** Kulongoski, J., did not participate in the consideration or decision of this case.

**RIGGS, J.**

Defendant was charged with possession, manufacture, and delivery of a controlled substance. ORS 475.992. Police officers searched defendant's residence pursuant to a search warrant and discovered evidence of his involvement with a marijuana growing operation. Before trial, defendant moved to suppress that evidence, arguing that the affidavit supporting the search warrant did not set forth facts sufficient to establish probable cause for the search. The trial court agreed and suppressed the evidence. The Court of Appeals affirmed in part and reversed in part. *State v. Goodman*, 152 Or App 83, 952 P2d 558 (1998). We allowed the state's petition for review and now reverse in part and affirm in part the decision of the Court of Appeals and reverse the order of the circuit court.

We take the facts from the Court of Appeals' opinion, as supplemented by the search warrant affidavit.

"While on aerial surveillance, a member of the Douglas County Interagency Narcotics Team (DINT) observed an outdoor marijuana-growing operation on forest land belonging to Rosboro Lumber Company. With the company's permission, Detective Case of DINT entered the well-concealed marijuana garden, where he discovered 13 marijuana plants, a Coleman cooler, a red and white flannel shirt and a nylon stocking. DINT officers installed a video camera at the garden's concealed entrance. The camera recorded two persons coming out of the garden. One was unidentified; the other was identified by the affiant as defendant. On the videotape, defendant was sporting a blue and white flannel shirt, a 'cammo' baseball cap, blue jeans, and white tennis shoes."

*Goodman*, 152 Or App at 85.

The following facts from the search warrant affidavit also are important: Case informed the affiant, Detective Stephens, that the marijuana plants in the concealed garden were being "hand watered." The garden was extremely well concealed; the entrance was covered with brush, and the garden could be reached only by crawling through a 30-foot

tunnel in the bushes. The videotape showed defendant concealing the entrance to the tunnel with brush after leaving the garden. It also showed an unidentified person in defendant's company carrying a plastic milk jug. Stephens and another detective who had viewed the videotape, Detective Schlenker, both were familiar with defendant from "numerous contacts" in the past. Stephens reviewed Department of Motor Vehicles records, which revealed that defendant resided at a house on Sunnyside Road in Sutherlin, approximately eight and one-half miles from the concealed marijuana garden.

Stephens's affidavit also described his extensive training and experience in the investigation of marijuana growing operations and drug trafficking and set forth facts, averments, and inferences that he derived from that training and experience. Relevant to this case are the following:

> "Additionally, I have personally been involved in obtaining search warrants, assisting other law enforcement officers in preparing search warrant affidavits, the execution of search warrants prepared and obtained by other law enforcement officers and/or assisting in the processing of in excess of (10) ten cases in which it was an outdoor marijuana grow that was not located on the marijuana grower's property and the search warrant was for the marijuana grower's residence. In each of these cases evidence was found in the marijuana grower's residence that demonstrated the person was involved in the manufacture of marijuana.

> "* * * * *

> "I know from my training and experience that individuals manufacturing and distributing controlled substances go to great lengths to avoid detection, or to avoid loss of their products if detected and searched. * * * Thus, I have found controlled substances concealed on the person of the suspect, within the residence in a variety of hiding places, within other buildings on the premises, or buried in containers in the earth or under objects.

> "* * * * *

"During my experience I have learned that it is necessary to perform certain acts when cultivating marijuana such as, but not limited to, using tools to turn the ground, apply fertilizer, apply water, cut the plant when it has matured, and for the processing of the plant into a useable form, which includes removing the stems and seeds; all of which requires certain equipment, including but not limited to shovels, rakes, hoses, watering equipment, fertilizers, chainsaws, and other cutting tools.

"Further, it has been my experience that when marijuana is cultivated that samples of the plant are taken and dried. That this drying is done in a structure to prevent moisture and excessive sunlight from reaching the plant.

"\* \* \* \* \*

"In addition, when growing marijuana outdoors, the common practice is to start the plants inside the residence or hot houses using small flower pots or cans, damp towels, ultraviolet or grow lights, flat pans for the placing of the dirt, planting of the seeds, and maturing or manicuring of the plant.

"\* \* \* \* \*

"It is also common when growing marijuana to possess marijuana in various stages of growth and manicuring. Thus, it is reasonable to conclude that a person growing marijuana possesses tools and equipment for cultivation and marijuana seeds to supply replacement stock of manicured plants, young plants and manicured marijuana.

"\* \* \* \* \*

"Additionally, during my experience I have discovered that persons that grow marijuana outdoors on property they do not own need a secure location to process the marijuana. This is normally their residence or a structure on their property.

"\* \* \* \* \*

"Through my training and experience I also have learned that individuals involved in drug or racketeering related criminal activity almost always retain records of their drug dealings. These records, sometimes coded, usually describe in some detail, drug purchases, sales or exchanges. These records, involving the illegal drug trade

are often found concealed in the homes, vehicles, rented rooms, or on the persons of the involved individuals. I have personally recovered such records from persons who traffic in controlled substances.

"Based on my training and experience I know that more often than not, evidence or fruits of drug or racketeering activity can often be found in the residences of persons involved in such activity * * *."

Based on Stephens's affidavit, a search warrant was issued for defendant's residence. During the search conducted pursuant to that warrant, police seized scales with marijuana residue, a metal box containing marijuana, loose marijuana and rolling papers, photographs, a shirt and hat matching those worn by defendant in the videotape, a plastic bag with marijuana residue, and over $4,000 in cash.

As noted, defendant moved before trial to suppress that evidence. The trial court granted the motion in a letter opinion, stating that it was bound by the Court of Appeals' opinion in *State v. Evans*, 119 Or App 44, 849 P2d 539 (1993). The trial court explained the rule from *Evans* by quoting a later Court of Appeals' opinion:

"[T]he officer's professed knowledge of the common practices of people who grow, distribute and sell marijuana did not suffice to furnish the missing facts that created probable cause that the particular residence contained marijuana."

*State v. Milosevich*, 131 Or App 51, 54, 883 P2d 898, *rev den* 320 Or 492 (1994). The court concluded that, although it "believe[d] that *Evans* was wrongly decided," this case was factually indistinguishable, and the evidence had to be suppressed.

On the state's appeal, the Court of Appeals affirmed in part and reversed in part. As to the marijuana, containers, scales, hat, and cash, the court affirmed the trial court, holding that "the affidavit, as was the case in *Evans*, lacked any facts providing a nexus linking the marijuana growing operation to the residence to be searched." *Goodman*, 152 Or App

at 87. However, the Court of Appeals reversed the trial court's suppression of the shirt that defendant was wearing when he appeared on the videotape, because the affidavit "clearly established probable cause to search for items of clothing worn while defendant was tending the garden."[1] *Id*.

We allowed the state's petition for review. For the reasons that follow, we conclude that the affidavit established probable cause to search defendant's residence, both for the clothing he wore when he appeared on the videotape and for other evidence of his involvement in the marijuana growing operation.

The issuance of search warrants is governed by ORS 133.545.[2] Under that statute, application for a search warrant

> "shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched."

ORS 133.545(4). If the judge reviewing the application and supporting affidavit finds on the basis of the record made before the judge that

> "there is probable cause to believe that the search will discover things specified in the application and subject to seizure under ORS 133.535, the judge shall issue a search warrant * * *."

ORS 135.555(2).

Our inquiry into the sufficiency of an affidavit supporting a search warrant involves two questions:

---

[1] The Court of Appeals' analysis regarding the shirt would appear to apply equally to the hat that defendant was wearing in the videotape, which, as noted above, also was discovered in the search of defendant's residence. However, in what we assume was an oversight, the court did not reverse the portion of the trial court's order suppressing the evidence of the hat.

[2] The state constitutional basis for the warrant requirement is Article I, section 9, which provides, in part:

> "[N]o warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The parties premise their arguments solely on the state constitution and statutes.

"(1) whether there is reason to believe that the facts stated are true, and (2) whether the facts and circumstances disclosed by the affidavit, if true, are sufficient to establish probable cause to justify the search requested."

*State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983). Here, there is no dispute about the first question; defendant did not move to controvert any of the statements in the affidavit and does not challenge them here. Accordingly, our inquiry is limited to whether the uncontroverted facts in the affidavit establish probable cause to search defendant's house.

"The legislature has not defined the term probable cause to search, as it has probable cause to arrest." *State v. Anspach*, 298 Or 375, 380, 692 P2d 602 (1984). In *Anspach*, this court concluded that "[t]he probable cause requirement means that the facts upon which the warrant is premised must lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *Id*. at 380-81. "When addressing probable cause issues in cases where a warrant was issued, we confine our analysis to a 'common-sense view of the affidavit' filed by the police officer." *State v. Moylett*, 313 Or 540, 552, 836 P2d 1329 (1992) (quoting *State v. Coffey*, 309 Or 342, 346, 788 P2d 424 (1990)).

In cases involving warrants to search buildings for evidence of outdoor marijuana growing operations, the affidavit must contain facts and objective observations sufficient to permit a reasonable judge to conclude that there is probable cause to believe (1) that the residents or owners of the building have some relationship to the growing operation; and (2) that marijuana, tools, or evidence of processing and sale of marijuana probably are in the building for which the warrant is sought. *Anspach*, 298 Or at 381. We address those requirements in turn.

The Court of Appeals held that there was "no question that the first requirement [was] satisfied" in this case. *Goodman*, 152 Or App at 86. Defendant argues that the Court of Appeals' holding was error, because the facts alleged in the affidavit are insufficient to establish the required nexus between defendant and the marijuana garden.

■ We agree with the Court of Appeals. Stephens's affidavit demonstrates that defendant was aware of the location of a well-concealed marijuana garden in a remote area, that he crawled through a hidden 30-foot tunnel through bushes to reach that garden, and that he concealed the entrance to the garden when he departed. Defendant contends, however, that his knowledge of, and one-time presence at, the garden do not demonstrate that he was connected with criminal activity on the site. He also argues that his presence at the site does not lead to a reasonable inference that he was tending the garden.

*Anspach* requires that the affidavit establish probable cause to believe that defendant has "some relationship" to the garden. 298 Or at 381. Probable cause is not certainty; "there is a vast difference between proof of probable cause and proof of guilt * * *." *State v. Tacker,* 241 Or 597, 601, 407 P2d 851 (1965). As the Court of Appeals concluded, the facts in Stephens's affidavit and the inferences that fairly may be drawn from those facts are sufficient to establish probable cause to believe defendant was connected to the garden. Accordingly, the affidavit satisfies the first requirement of *Anspach.*

■ We turn to the second requirement from *Anspach* and address the question whether the affidavit was sufficient to establish probable cause to believe that marijuana, tools, or evidence of marijuana processing or sale would be found at defendant's residence. As noted above, the Court of Appeals answered that question in defendant's favor. *Goodman,* 152 Or App at 87.

We disagree with the Court of Appeals' conclusion. First, the affidavit established probable cause to believe that items of physical evidence of the growing operation—tools, marijuana, records, or other items related to the cultivation, processing or distribution of the crop—likely would be found at some place other than the garden. Stephens stated in his affidavit that he knew based on his training and experience that cultivating marijuana requires tools and fertilizer. No fertilizer or implements of cultivation were found at the garden. Stephens also stated that he knew based on his training and experience that cultivated marijuana must be processed

indoors before being distributed or used. Officers found no harvested marijuana or mechanisms for processing it at the garden. Further, Stephens stated in the affidavit that marijuana growers typically maintain records of their crops and distribution in houses or other secure indoor locations.

Those are facts, or "quant[a] of information," *Coffey*, 309 Or at 346, that contribute to the affidavit. Defendant had the opportunity to controvert the facts in the affidavit and chose not to attempt to do so. Taken together, those facts lead to the reasonable conclusion that physical evidence of the growing operation would be found somewhere other than the garden; specifically, at a secure indoor location.

The question remains whether it was reasonable to conclude that any of that evidence probably would be found at the particular indoor location for which the warrant was sought, defendant's residence. The Court of Appeals ruled in defendant's favor on that point, concluding that the affidavit "lacked any facts providing a nexus linking the marijuana growing operation to the residence to be searched." *Goodman*, 152 Or App at 87. We disagree. The first fact linking the garden and the residence is that defendant, whose connection to the garden was demonstrated in the affidavit, lived at the residence to be searched. That fact links the garden and the house; in other words, the facts in the affidavit connecting the garden to defendant and defendant to the house connect the garden to the house. By extension, defendant also provides a link between the house and items of physical evidence from the garden. *See Villagran*, 294 Or at 415 (the defendant's connection to marijuana in Lookingglass and to a house in Umpqua provided probable cause to search the house for evidence relating to the marijuana).

Indeed, there is more. Defendant's residence also is linked to evidence relating to the garden by reasonable inferences drawn from the facts in Stephens's affidavit. As noted, the affidavit establishes a high likelihood that evidence relating to the garden would be found in a secure indoor location. Defendant's residence is such a location; the affidavit makes clear that defendant resided at a house in the vicinity of the garden. It was reasonable to infer from that combination of facts and circumstances that some or all of the evidence from

the garden probably would be found at that house. Here, as in *Villagran*, the affidavit establishes defendant's connection to the growing operation, the probable existence of physical evidence relating to that operation, and a connection between the operation and the residence to be searched.

■ Finally, we note that the Court of Appeals in this case, as in *Evans*, appears to have discounted portions of the affidavit for the reason that facts derived from training and experience cannot contribute to a factual nexus between a residence, a defendant, and a remote grow location. *Goodman*, 152 Or App at 86. Facts derived from training and experience may contribute that necessary factual nexus in a determination of probable cause. In *Coffey*, for example, the officer's knowledge that a particular type of packaging frequently was used in the sale of cocaine was treated as a fact contributing to the sufficiency of the affidavit. 309 Or at 347. In *State v. Herbert*, 302 Or 237, 242, 729 P2d 547 (1986), the officer's knowledge that paperfolds of a particular shape typically are used as containers for drugs weighed in this court's holding that the officer had probable cause to seize the paperfold. In *State v. Westlund*, 302 Or 225, 231, 729 P2d 541 (1986), the officer's "testimony regarding his experience and training in drug investigations and his '90 percent' certainty that the white powder visible inside the transparent vial was a controlled substance" established probable cause for a warrantless search of the contents of the vial. Those cases demonstrate that facts derived from training and experience may be considered in determining whether probable cause exists.

We do not here suggest that an officer's expertise, unconnected to objective facts derived from other sources, will satisfy constitutional requirements. This is not such a case. Here, the officer's expertise is used only to provide a criminal law nexus to a series of other, separately verified facts which—absent the officer's explanation—could be understood to be innocent. Expertise is a permissible way to establish such a nexus, and this case is an illustration of circumstances in which such expertise may be used in that way.

The affidavit in this case establishes probable cause for a warrant to search defendant's residence for evidence of the marijuana growing operation. Consequently, it was error

to suppress the evidence obtained during the search conducted pursuant to that warrant.

The decision of the Court of Appeals is affirmed in part and reversed in part, and the order of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.