Argued and submitted November 6, 2013; on appeal, part of orders suppressing evidence reversed, otherwise affirmed; affirmed on cross-appeal April 29; petition for review denied October 22, 2015 (358 Or 146)

STATE OF OREGON,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

STACY RENEE HEYNE,
*Defendant-Respondent*
*Cross-Appellant.*

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

DYLAN STUART YUNKE,
*Defendant-Respondent.*

Linn County Circuit Court
11010116, 11010117;
A149751 (Control), A149752

348 P3d 1170

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for appellant-cross-respondent. On the briefs were John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Assistant Attorney General.

Jonah Morningstar, Deputy Public Defender, argued the cause and filed the brief for respondent-cross-appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Brian L. Michaels argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Judge, and Nakamoto, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

The state appeals pretrial orders in two consolidated cases that suppressed evidence that the police had obtained in a search of defendants' home under a search warrant. The police discovered marijuana and marijuana-related items in the search, which led the state to charge defendants with a number of crimes. Defendants moved to suppress the evidence from the search. The trial court granted defendants' motions, and the state appeals the resulting orders. *See* ORS 138.060(1)(c) (authorizes state to appeal pretrial orders suppressing evidence). For the reasons stated below, we reverse and remand.[1]

A magistrate issued a search warrant that authorized the police to search defendants' home for evidence of marijuana-related crimes. The warrant was supported by an affidavit from Sweet Home Police Officer Ogden. Ogden stated in his affidavit that he had received information from Officer McCubbins about a traffic stop involving defendant Yunke. The facts of the traffic stop, as related by McCubbins to Ogden, are as follows.

McCubbins was on patrol when he stopped Yunke for running a red light. McCubbins smelled the odor of marijuana emanating from Yunke's car, and he asked Yunke for his medical-marijuana card because he knew that Yunke had had one. Yunke handed McCubbins an expired medical-marijuana card and explained that the Oregon Department of Human Services had issued him a new card and had told him that he could use his expired card until he received his new one. Later in the stop, Yunke gave McCubbins permission to search his car, which led to the discovery of 11 ounces of marijuana, the bulk of which was stored in three grocery bags. One of those bags contained four Ziplock baggies that each contained approximately one ounce of marijuana. The police also found a pistol and a knife in the car. McCubbins seized the marijuana and asked Yunke to bring a copy of

---

[1] Defendant Heyne cross-appeals and contends that the trial court erred when it refused to suppress incriminating statements that she had made to the police when they executed the search warrant. That argument is premised on the assumption that the search was unlawful. Because we conclude that the search warrant was valid, defendant's cross-appeal is unavailing.

his application to renew his medical-marijuana card to the police station later that day so that the police could confirm that he was allowed to possess the marijuana found in his car.

The affidavit went on to explain that the police had initiated a criminal investigation when, two days after the stop, Yunke had not submitted anything to the police to substantiate his claim that he had applied to renew his medical-marijuana card. The police contacted the Oregon Department of Human Services and learned that, although Yunke had had a medical-marijuana card that had allowed him to possess and grow limited amounts of marijuana, his card had expired and he had not applied to renew it. The police also were told that Yunke's expired card had authorized him to grow marijuana at his home in Lebanon, Oregon.

The affidavit included statements by Ogden about his experience and knowledge of marijuana resulting from his work as a police officer. He stated that "user amounts of marijuana are 1/8 ounce and less[;] [a]nything more than *** 1/8 ounce of marijuana [is] considered [a] dealer amount." He also asserted that "individuals who sell and keep controlled substances, conceal controlled substances for future sales *** within buildings and vehicles under their control."

A magistrate issued a warrant to search Yunke's home. In the ensuing search of the home—where Yunke lived with his codefendant Heyne and their two children—the police found marijuana and marijuana-related items, which led the state to charge defendants with various crimes.

Defendants moved to suppress the evidence obtained in the search of their home on the ground that Ogden's affidavit did not contain sufficient facts to establish probable cause to believe that marijuana-related evidence would be found there. Defendants argued that, to establish probable cause to search their home, a supporting affidavit had to contain facts sufficient to permit the magistrate to conclude that Yunke had possessed the marijuana found in his car and that marijuana or evidence of marijuana possession or delivery would likely be found in Yunke's home. Defendants

contended that the supporting affidavit had failed to do that. The trial court agreed with defendants and granted their suppression motions, concluding that the state had not established enough of a connection between defendants' home and the marijuana seized from Yunke's car because the only fact establishing that connection was that Yunke's "residence was formerly a licensed [marijuana-growing] site."

Our task on review of the court's suppression orders is to determine whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by Ogden's affidavit, that there was probable cause to believe that a search of defendants' home would reveal evidence of Yunke's possession or delivery of marijuana. *See State v. Castilleja*, 345 Or 255, 264, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008) (stating standard of review). We are to construe the supporting affidavit in a commonsense and realistic fashion, *State v. Tacker*, 241 Or 597, 601-02, 407 P2d 851 (1965), deferring to reasonable inferences that could be drawn from the facts in the affidavit, *State v. Henderson*, 341 Or 219, 224-25, 142 P3d 58 (2006).

We agree with defendants that, to establish probable cause in this case, the supporting affidavit had to contain sufficient facts to connect defendant's home to the marijuana seized from Yunke, but we nonetheless conclude that Ogden's affidavit did that. Ogden's affidavit stated that Yunke was found with 11 ounces of marijuana in his car at a time when his medical-marijuana card had expired. Given that Yunke's medical-marijuana card had expired, a magistrate could readily conclude that Yunke unlawfully possessed the marijuana seized from his car. *See* ORS 475.864 (making possession of marijuana unlawful). Further, given that Ogden had seized 11 ounces of marijuana from Yunke's car, that some of the marijuana was packaged in baggies containing one-ounce amounts, and that Ogden had stated that a quantity of marijuana greater than an eighth of an ounce was a dealer quantity, a reasonable magistrate could conclude that Yunke was dealing marijuana. *See* ORS 475.860 (making delivery of marijuana unlawful). Finally, the magistrate could conclude that evidence related to marijuana possession or delivery would likely be found at Yunke's Lebanon

home, because that was the location at which Yunke had been authorized under his expired medical-marijuana card to grow and keep marijuana.

The Supreme Court upheld a search warrant under similar circumstances in *State v. Goodman,* 328 Or 318, 975 P2d 458 (1999). In *Goodman,* the police had placed a video camera at a remote outdoor marijuana-growing operation. The camera recorded the defendant concealing the entry-way to the operation and crawling through a 30-foot tunnel to reach the marijuana. The police applied for, and a magistrate issued, a search warrant to search the defendant's home, which was located eight and a half miles from the site at which the marijuana was being grown. The defendant moved to suppress the evidence found in the subsequent search of his home on the ground that the magistrate should not have issued the warrant because there were no facts linking the defendant's home to the marijuana-growing operation.

The Supreme Court rejected the challenge to the search warrant. The court quoted at length from the affidavit in support of the warrant, which discussed the need for those involved in growing marijuana outdoors to use a variety of tools and materials that were not found at the outdoor site and to conduct some marijuana-production and marijuana-processing activities indoors. Based on those facts, the court reasoned that the fact that the defendant lived at his home and was involved in the marijuana-growing operation connected his home to the operation:

> "The first fact linking the garden and the residence is that defendant, whose connection to the garden was demonstrated in the affidavit, lived at the residence to be searched. That fact links the garden and the house; in other words, the facts in the affidavit connecting the garden to defendant and defendant to the house connect the garden to the house. By extension, defendant also provides a link between the house and items of physical evidence from the garden."

*Id.* at 327. Further, the affidavit established that there was a high likelihood that evidence relating to the garden would be found in a secure location, such as a residence, and,

hence, the proximity of the defendant's home to the garden also made it likely that marijuana and marijuana-related items would be found at the defendant's home. *Id.*

Here, the facts in Ogden's affidavit establish as great a likelihood that marijuana-related evidence would be found at defendants' home as did the facts in *Goodman* establish that marijuana-related evidence would be found at the defendant's home in that case. The affidavit linked Yunke to the marijuana in the car and linked him to his home, which, in light of the statement in Ogden's affidavit that people who sell controlled substances conceal them in vehicles and buildings that they control, provided a basis to believe that evidence of marijuana possession or dealing would be found at Yunke's home. The fact that Yunke's Lebanon home also was identified as the place at which Yunke had been authorized under his expired medical-marijuana card to grow and keep marijuana further tied Yunke's home to the marijuana found in Yunke's car. Hence, a reasonable magistrate could conclude that it was likely that marijuana and marijuana-related items would be found at Yunke's home. The trial court erred in concluding otherwise and in granting defendants' suppression motions.

On appeal, part of orders suppressing evidence reversed; otherwise affirmed. Affirmed on cross-appeal.