Argued and submitted March 29, reversed and remanded  September 28, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRAVIS JASON WEBBER,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1101820; A154625

383 P3d 951

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Lauren P. Robertson, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Jamie K. Contreras, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## DEHOOG, J.

Defendant appeals a judgment of conviction for unlawful delivery of cocaine, ORS 475.880. He assigns error to the trial court's denial of his motion to suppress evidence found during a warrant search of his home. Defendant argues that the affidavit submitted in support of the search warrant failed to establish probable cause for that search, because it did not show a sufficient connection between defendant's suspected criminal conduct and defendant's home. The state argues that the collective circumstances set forth in the affidavit—including defendant's involvement in ongoing drug sales, the lack of evidence of those sales on his person or in his vehicle, and the investigating officer's training and experience—established probable cause to believe that evidence of drug activity would be located in defendant's home. We conclude that the affidavit did not support a finding of probable cause to search defendant's home, and, accordingly, we reverse and remand.

Because defendant argues that the challenged search warrant was not supported by probable cause, we take the relevant facts from the supporting affidavit submitted by Deputy Ritter of the Clackamas County Sheriff's Office. In part, Ritter's affidavit explained that, in August 2011, a confidential informant (C.I.) had given him the name of a drug dealer, Benavente, who had sold the C.I. drugs in the past. At Ritter's request, the C.I. agreed to participate in controlled buys from Benavente. During the ensuing controlled buys, the investigating officers became aware of defendant's involvement in Benavente's drug activity. The officers observed Benavente meeting with defendant both before and after the first controlled buy, which took place less than three weeks before Ritter requested the warrant to search defendant's home. That contact included a hand-to-hand exchange through the window of defendant's vehicle at the conclusion of the buy. Following that transaction, the C.I. gave the officers "a plastic baggie containing a white powder substance"—later identified by Ritter as cocaine— which the C.I. had purchased from Benavente.[1]

---

[1] The affidavit did not state how much cocaine was in the baggie.

Defendant was present at another controlled buy the day before Ritter's warrant request. That day, officers observed a man, Dahl, pick Benavente up from his home in a Subaru wagon and drive him to a gas station. At the gas station, the officers saw defendant begin to follow the Subaru in his own vehicle, a Dodge Durango. Defendant followed the Subaru to a grocery store parking lot, where defendant parked "in the farthest south part of the parking lot" while the Subaru "parked west." According to Ritter, defendant watched the Subaru "intently" and, at some point, moved his own vehicle to gain a better view of the Subaru.

Two officers detained Benavente and Dahl shortly after their arrival. Upon searching the Subaru, the officers found "three baggies" of cocaine weighing 29.7, 15.3, and 9.4 grams.[2] According to Dahl, defendant had given them the cocaine at the gas station. Benavente later appeared to confirm that defendant was the source of the cocaine, when he told the officers that they "saw [defendant] give [him] the shit." During the same interview, Benavente described defendant as "small time" and not his regular supplier.

While those officers detained Dahl and Benavente, several other officers contacted defendant at his vehicle. Defendant denied any knowledge of a drug sale and claimed to have been shopping.[3] The officers asked to search defendant's Durango, and defendant consented. During that search, a drug detection dog alerted to the passenger-side floorboard of the Durango, but the officers did not find any evidence of criminal activity in that vehicle. Defendant offered the explanation that Benavente, who was known to him as a drug dealer, had recently been seated in the passenger seat.

The officers also interviewed Benavente's girlfriend as part of their investigation. She confirmed that Benavente sometimes obtained drugs from defendant, but she did

---

[2] Although the affidavit stated how much the seized baggies of cocaine weighed, it did not explain the significance, if any, of those weights. Notably, the affidavit did not indicate whether the officers considered those amounts to be dealer quantities or merely quantities associated with individual use.

[3] Defendant later said that he had been following Benavente and Dahl in and out of various parking lots because he had intended to meet them for lunch.

not know what amounts were involved or how often that happened.[4]

Ritter conducted a records check and discovered that defendant had been the subject of an investigation into unlawful delivery of cocaine and ecstasy in 2003. Ritter also read several text messages that Benavente had exchanged with defendant. One referred to "a whole pizza," which Ritter understood to be code for an ounce of cocaine, while other messages discussed lunch or dinner meetings, which Ritter believed were veiled references to drug transactions.

Based on the foregoing investigation, Ritter concluded that defendant was involved in drug sales. In addition to stating that conclusion, Ritter's affidavit contained a lengthy, generic description of circumstances that, in his training and experience, are commonly associated with drug trafficking.[5] For example, Ritter explained that "sellers of controlled substances normally possess scales, packaging, paraphernalia, money and/or controlled substances." He further explained that traffickers "commonly process and package the drug for sale" and have equipment to do so, which they conceal "in various locations, including [their] residence[s], outbuildings, storage lockers, buried containers, vehicles, carry bags and purses, and on [their] person[s]"; that they "frequently consume illegal drugs and will keep a supply of these substances at their premises, in their vehicles, and on or about their person[s]"; and that they "commonly keep and maintain records pertaining to their illegal activities." Ritter noted that the officers had not found any of those items in defendant's vehicle during their search.

Ritter's investigation, together with his training and experience, led him to conclude that there was probable cause to believe that defendant possessed evidence of drug activity at his home, and, accordingly, Ritter requested

---

[4] We note that, like Benavente's description of defendant as "small time," there was nothing in this individual's statement that would necessarily have informed Ritter or the magistrate that Benavente had obtained drugs from defendant on any occasion other than the two that Ritter recounted.

[5] According to his affidavit, Ritter had been a law enforcement officer for more than 13 years; had attended numerous trainings, including many specific to drug transactions; and had participated in more than 20 investigations involving the possession and delivery of cocaine.

a warrant to search that location. A magistrate issued the requested warrant, and the ensuing search led to the discovery of evidence of drug distribution.

Based partly on that evidence, the state charged defendant with unlawful delivery of cocaine, ORS 475.880, and unlawful possession of cocaine, ORS 475.884. Defendant moved to suppress the evidence obtained as a result of the search of his home, arguing that there had not been probable cause for the search. Defendant contended that, even if Ritter's affidavit established probable cause to believe he was engaged in illegal drug activity, the affidavit did not establish any connection—or "nexus"—between his suspected drug activity and his home. The state responded that defendant himself provided a connection between his criminal activity and his home. That connection, the state argued, together with Ritter's training and experience and the absence of drug evidence in defendant's vehicle (which, the state suggested, increased the likelihood that drug evidence would be in defendant's home), provided a sufficient nexus.

The trial court concluded that the affidavit supported the issuing magistrate's probable cause determination and denied defendant's motion. In the court's view, it was reasonable to infer from defendant's involvement in more than one drug sale that a supply of drugs and related evidence would be found at his home. Defendant proceeded to trial, where a jury convicted him of both charges.[6]

On appeal, the parties largely renew the arguments that they made to the trial court. Defendant, relying on *State v. Goodman*, 328 Or 318, 975 P2d 458 (1999), and several of our subsequent decisions, contends that the affidavit failed to establish probable cause to believe that evidence of drug activity would be found in his home. According to defendant, the affidavit could not establish probable cause to search his home without connecting Ritter's criminal investigation to that particular location through specific facts and, in defendant's view, the mere fact that he lived in the home was not enough.

---

[6] The trial court merged the possession count into the delivery count at sentencing.

The state similarly cites *Goodman,* but points to different decisions of ours, including *State v. Chamu-Hernandez,* 229 Or App 334, 212 P3d 514, *rev den,* 347 Or 43 (2009), and responds that, given defendant's undisputed connection with what the state characterizes as ongoing drug sales, the issuing magistrate was permitted to rely on Ritter's training and experience to establish the required nexus between defendant's suspected drug crimes and his home. According to the state, Ritter's conclusion "that a drug dealer would probably keep items related to drug sales at his residence is a common-sense proposition that requires little explanation or foundation." Defendant does not dispute the state's premise—that an officer's training and experience may be relevant to the probable cause inquiry—but contends that the affidavit must connect that training and experience to the objective facts found in the affidavit; unconnected to objective facts obtained from other sources, defendant argues, Ritter's training and experience amounted to no more than a "hunch."

We begin our discussion with the applicable standard of review and related burden of proof. Search warrants are presumptively valid; thus, in challenging a search warrant, it is a defendant's burden to establish that the warrant was defective. *Id.* at 341. The assertion that an affidavit in support of a search warrant fails to establish probable cause presents a question of law, and we review the issuance of a warrant for legal error. *State v. Castilleja,* 345 Or 255, 264, 192 P3d 1283, *adh'd to on recons,* 345 Or 473, 198 P3d 937 (2008). Specifically, we consider whether a neutral and detached magistrate could reasonably have concluded that the supporting affidavit established probable cause. *Id.* We rely on the facts set forth in the affidavit,[7] together with any reasonable inferences that those facts support. *Chamu-Hernandez,* 229 Or App at 341.

Thus, the issue on appeal is whether a neutral and detached magistrate could reasonably have concluded that

---

[7] In this case, because defendant does not, on appeal, challenge the truth of the facts in the affidavit, we accept those facts as true in determining whether they were sufficient to establish probable cause. *See Goodman,* 328 Or at 325 (when defendant does not move to controvert statements in affidavit, appellate "inquiry is limited to whether the uncontroverted facts in the affidavit establish[ed] probable cause to search").

Ritter's affidavit established probable cause to believe that evidence of drug activity would be found in defendant's home. *See State v. Villagran*, 294 Or 404, 413, 657 P2d 1223 (1983) ("The relevant inquiry is whether the affiant has established probable cause to believe that particular evidence will be found in a particular location."). Probable cause means a "probability, which [is] more than a mere possibility." *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001). And, as relevant here, probable cause exists only if the affidavit sets forth facts that create a nexus between the place to be searched and the objects to be found. *State v. Chase*, 219 Or App 387, 392, 182 P3d 274 (2008). As noted, the crux of the parties' dispute in this case is whether Ritter's affidavit established the required nexus between defendant's suspected drug activities—which all occurred somewhere other than his home—and the home itself.

The Supreme Court's decision in *Goodman* provides the framework for that dispute. In *Goodman*, a detective saw the defendant surreptitiously access a hidden marijuana garden, and sought a warrant to search the defendant's home located eight-and-a-half miles away. 328 Or at 320-21. In an affidavit in support of that request, the detective explained that, based on his training and experience, he knew that marijuana growers commonly dry and prepare marijuana for sale in enclosed structures; that they generally grow the mature plants from seedlings that they raise indoors; and that marijuana cultivation requires various tools and materials that were not found at the grow site itself. *Id.* at 321-22. In addressing whether the affidavit established probable cause to search the defendant's home, the Supreme Court articulated its test for determining whether an affidavit establishes a sufficient nexus between suspected drug activity and a location that an officer seeks to search for evidence of that activity. *Id.* at 325. Under that test, the affidavit must establish probable cause to believe both (1) that there is a connection between the owner or occupant of the home (or other location) and the suspected drug activity; and (2) that evidence of that drug activity will be found in the location that the officer seeks to search. *Id.*

Applying that test, the *Goodman* court readily concluded that the affidavit provided probable cause to believe

that the defendant had a relationship to the unlawful grow site. *Id.* at 325-26. Turning to the second question—whether there were sufficient facts in the affidavit to support the conclusion that evidence would "be found at some place other than the garden" and, specifically, at "the particular * * * location for which the warrant was sought"—the court concluded that the affidavit also met that requirement. *Id.* at 326-27. In that regard, the court first noted the detective's assertions, based on his training and experience, that marijuana cultivation requires certain tools and materials not found at the grow site, and that marijuana growers require a secure indoor location to process the drug for delivery. *Id.* at 326. Those facts supported the reasonable conclusion that physical evidence would be found "somewhere other than the garden." *Id.* at 327. After making that determination—that the affidavit established that additional physical evidence related to the grow site was likely to exist—the court next concluded that the affidavit also established a sufficient nexus between the site and the defendant's home to support the finding that such evidence would likely be at that particular location. *Id.* Among other things, the court noted that the defendant "lived at the residence to be searched"; "the affidavit establishe[d] a high likelihood that evidence relating to the garden would be found in a secure indoor location"; and the defendant's home was in the vicinity of the garden. *Id.* Accordingly, the court concluded that probable cause supported the warrant to search that home. *Id.* at 328.

Applying *Goodman* and its progeny, we conclude that Ritter's affidavit failed to establish probable cause to believe that evidence of illegal drug activity would be found in defendant's home. As in *Goodman,* we readily conclude that there was probable cause to believe that defendant was connected with the drug activity described in the affidavit, a conclusion he does not dispute on appeal. But, moving to the second part of *Goodman*'s analysis, we conclude—as defendant urges—that the absence of objective facts connecting that illegal activity to defendant's home foreclosed the conclusion that the affidavit provided a sufficient nexus to that location. Accordingly, as we explain below, the trial court erred in denying defendant's motion to suppress.

This case turns almost exclusively on the significance we give Ritter's training and experience, which informed *him*, at least, that the conclusion that defendant was engaged in drug dealing also justified the belief that evidence of that drug activity would be found at defendant's home. To assist us in determining what significance that training and experience has, defendant cites, among other cases, *State v. Daniels*, 234 Or App 533, 540, 228 P3d 695, *rev den*, 349 Or 171 (2010), where we stated:

> "It is * * * well settled * * * that an assertion of training and experience is not enough by itself to create probable cause. In order for an attestation regarding training and experience to support probable cause, it must connect a defendant's particular conduct or circumstances with the specific evidence that police seek, and it must be supported by objective facts derived from other sources."

(Quoting *Goodman*, 328 Or at 328 (internal quotation marks and citations omitted).)

The state, in turn, finds language equally supportive of its position in our decision in *Chamu-Hernandez*, where we concluded:

> "[R]eliance on [an officer's training and experience] is a permissible way to establish a nexus between a suspected crime and a particular location to be searched."

229 Or App at 344 (citing *Goodman*, 328 Or at 328).

To some, that seemingly straightforward statement from *Chamu-Hernandez* may suggest that, if there is probable cause to suspect that a person has committed a crime, an officer need only cite his or her training and experience to establish probable cause to believe that evidence of the crime will be found at the person's home. However, upon closer examination, the applicable case law, including *Chamu-Hernandez*, provides for a more nuanced, case-by-case assessment, with "the weight to be given to such representations depend[ing] on the totality of the facts contained in the affidavit," *Wilson*, 178 Or App at 171.[8]

_____

[8] We are cognizant that our role on appeal is limited to determining whether, based on the facts set forth in the affidavit and the inferences those facts support, a magistrate could reasonably have concluded that the affidavit established probable cause. *Castilleja*, 345 Or at 263-64. That inquiry presents a legal

*Goodman* itself illustrates that case-by-case approach. As noted, the affidavit in *Goodman* established that the defendant was associated with a marijuana grow operation in the vicinity of his home and that various trappings commonly associated with that activity had not been found at the grow site. 328 Or at 326-27. Further, information gleaned from the affiant's training and experience created a "high likelihood that evidence relating to the garden would be found in a secure indoor location." *Id.* at 327. Collectively, those contents of the affidavit established probable cause to believe that the defendant's home was the specific "secure indoor location" where evidence of drug activity would be found. *Id.* at 327-28.

Notably, even though the *Goodman* court said that "facts derived from training and experience may contribute th[e] necessary factual nexus in a determination of probable cause," the court did not suggest that, in all instances, an officer's mechanical invocation of "training and experience" is sufficient to obtain a warrant to search a given location. *Id.* at 327; *see also Daniels*, 234 Or App at 541 ("The phrase 'training and experience' * * * is not a magical incantation with the power to imbue speculation, stereotype, or pseudoscience with an impenetrable armor of veracity."). As the court cautioned in *Goodman*:

> "We do not here suggest that an officer's expertise, unconnected to objective facts derived from other sources, will satisfy constitutional requirements. * * * Here, the officer's expertise * * * provide[d] a criminal law nexus to a series of other, separately verified facts which—absent the officer's explanation—could be understood to be innocent. Expertise is a permissible way to establish such a nexus, and this case is an illustration of circumstances in which expertise may be used in that way."

328 Or at 328.

Thus, in *Goodman*, the affidavit was rich enough in "objective facts derived from other sources" that the

question—we do not independently evaluate the persuasive value of those facts or draw our own inferences from those facts. *Id.* at 265-66. Accordingly, any references to the "weight" we give Ritter's training and experience refer strictly to the legal significance that expertise may have.

attesting officer's specialized training and experience was helpful to the magistrate, and closed the gap between the objective facts and constitutionally sufficient probable cause. *See id.*[9] Similarly, the significance of Ritter's training and experience in this case depends on the degree to which it was connected to the affidavit's objective content and may have assisted the magistrate's understanding of that content. And, as the following cases illustrate, the strength of that connection is, in turn, largely dependent upon the strength of that underlying content—*i.e.*, the specific facts of the investigation.

Following *Goodman,* we have consistently evaluated an affiant's training and experience in light of its ability to "shore up" an affidavit's objective content. *See Wilson,* 178 Or App at 171 (concluding that the objective facts in that case were "too weak to be shored up" by the affiant's expertise). In *Wilson,* for example, under circumstances similar to this case, drug enforcement officers had arranged for an informant to make a controlled drug buy from the defendant. *Id.* at 165. In an affidavit requesting a warrant to search the defendant's home, a deputy described a controlled buy involving the defendant and also described the defendant's house, but did not tie the two together. *Id.* at 165-66. Instead, the affidavit stated that, in the deputy's training and experience, individuals who traffic drugs "usually have hidden on their property, person, or in their vehicles evidence of their drug dealing." *Id.* at 166 (internal quotation marks omitted). On the state's appeal from an order granting the defendant's motion to suppress, we agreed with the defendant that the warrant was not supported by probable cause, because the affidavit failed to establish a nexus between the place to be searched and the items to be found. *Id.* at 165, 170.

In that case, we adopted the trial court's reasoning that the affidavit did not "connect th[e] reputed drugs to

---

[9] *Goodman* provided the following examples of an officer's training and experience contributing the requisite nexus: an officer's knowledge that a particular type of packing is frequently used in the sale of cocaine; an officer's knowledge that paperfolds of a particular shape are typically used as containers for drugs; and an officer's testimony that white powder visible in a transparent vial is almost always a controlled substance. *See* 328 Or at 328 (citing *State v. Coffey,* 309 Or 342, 347, 788 P2d 424 (1990); *State v. Herbert,* 302 Or 237, 242, 729 P2d 547 (1986); and *State v. Westlund,* 302 Or 225, 231, 729 P2d 541 (1986)).

anywhere," and agreed that, although the deputy's training and experience was entitled to "some weight," it did not establish the required nexus, given "that the controlled buy had taken place in a third-party's residence, and not in [the] defendants' home." *Id.* at 169-70 (internal quotation marks omitted). In reaching that conclusion, we specifically rejected the argument that the state makes here, that, under *Goodman*, an officer's training and experience, standing alone, is sufficient to create a nexus between a given location and illegal drug activity. *Id.* at 171-72. Noting that, under *Goodman*, the significance of an officer's training and experience "depends on the totality of the facts contained in the affidavit," we concluded that the recitation of training and experience in that case was not sufficient to overcome the complete lack of objective evidence tying the defendant's illegal conduct to his home. *Id.* (citing *Goodman*, 328 Or at 328). In other words, even though the affidavit in *Wilson* indisputably connected the defendant with illegal activity, the facts in the affidavit were, nonetheless, "simply too weak to be shored up by the officer's general training and experience" so as to justify a search of his home. *Id.* at 171.

Similarly, in *State v. Miller*, 254 Or App 514, 295 P3d 158 (2013), we considered the facts set forth in a search warrant affidavit in their totality before concluding that the affidavit did not establish probable cause to search that defendant's home. There, a detective sought a warrant to search that location for evidence of methamphetamine possession, manufacturing, and delivery. *Id.* at 517. In relevant part, the detective's supporting affidavit stated that the defendant had three drug-related convictions on his record; officers had witnessed the defendant selling a small amount of methamphetamine out of his car to an informant three times at undisclosed locations; officers had watched the defendant come from, and go to, his residence before and after one of those transactions; and the detective knew, based on his training and experience, that drug traffickers often kept "controlled substances, scales, packaging material, cutting agents and currency from drug sales," as well as other evidence of drug-related activity. *Id.* at 517-19. We held that, because the drug activity did not occur at the defendant's residence and "[n]one of [the officer's] generic

averments *** establishe[d] that, where a person is using a *vehicle* to engage in drug transactions, evidence of possession, manufacturing, or distribution is likely to be in his or her *residence*," the affidavit did not establish probable cause to search that location. *Id.* at 528 (emphases in original). As in *Wilson*, we rejected the state's assertion that the detective's training and experience contributed the necessary factual nexus between the defendant's home and the drug sales. *Id.* Even though the detective in *Miller* had attested to the fact that the defendant first traveled from his home to a controlled buy and then from that buy back to his home, we concluded that there was nothing in the affidavit generally, or in the detective's training and experience specifically, that "permit[ted] and support[ed] a nonspeculative inference" that the activity was connected to the home. *Id.*

In this case, as in *Wilson* and *Miller*, we conclude that the objective facts set forth in Ritter's affidavit—as well as the connection between those facts and Ritter's training and experience—were simply too weak for the affidavit, in its totality, to establish probable cause to search defendant's home. First, Ritter's affidavit did not disclose any direct connection between the observed drug crimes and that residence. For example, Ritter's affidavit did not indicate that defendant was coming from or going to his home at the time of either controlled buy, nor did it provide anything else to make it likely that defendant used his residence as a base of operations. *Cf. Chamu-Hernandez*, 229 Or App at 342-43 (although affidavit did not specify where suspect's drug deliveries took place, pattern of returning to Washington County residence in course of making those deliveries supported the inference that suspect possessed drugs at that residence). In fact, the only objective facts specific to defendant's home in Ritter's affidavit were its address and the fact that defendant lived there.

Second, this is not a case in which the objective content of the affidavit made it probable that other evidence of defendant's suspected drug activities would exist, whether in his house or any other place. Again considering *Goodman*, it was significant in that case that the fertilizer and tools required for marijuana cultivation were not present at the

observed grow site and were, therefore, likely to be found somewhere else, such as at the defendant's home. 328 Or at 327-28. Similarly, in *State v. Harper*, 197 Or App 221, 224, 233, 105 P3d 883 (2005), we concluded that there was probable cause to search the defendant's home when the objective facts described in the affidavit—which included the defendant's implausible explanation for having purchased a substantial quantity of iodine, a precursor substance for methamphetamine—made it probable that the defendant was manufacturing that drug. Because the police encountered the defendant on his bicycle, when he was not in possession of the iodine or any means of producing methamphetamine, it was reasonable to conclude that evidence of manufacturing existed at some other location, such as his home. *Id.*

Here, in contrast, the inference that additional evidence of defendant's drug-related conduct was likely to exist was almost wholly dependent upon Ritter's generic understanding that "sellers of controlled substances normally possess" a number of different items, none of which were in defendant's immediate possession when the police encountered him. But, unlike cultivating marijuana for sale, which requires more than just the mature plants observed in *Goodman,* or the production of methamphetamine, which necessarily involves a production site, it is far less evident that the delivery of cocaine requires anything other than the controlled substance itself. Thus, we attach relatively little significance to the objective fact that defendant, a suspected drug dealer, did not have evidence of that activity on his person or in his vehicle. While, consistent with our approach in *Wilson,* we afford "some weight" to Ritter's expertise regarding the usual practices of drug traffickers, we conclude that it is not sufficiently tied to the objective facts in this case to support a nonspeculative inference that defendant would possess drug-related evidence at his home.

Third, and relatedly, Ritter's affidavit did not suggest that defendant was engaged in the sort of ongoing, high-volume drug operation that has, in previous cases, supported the inference that additional evidence of drug activity will be found in other, specific, locations. For example, in *Villagran,* the Supreme Court reasoned that the "scale

and sophistication" of the suspect's marijuana grow operation necessarily meant that records related to that operation would exist somewhere. 294 Or at 415. Because the investigating officers had not found records at the grow site, the court concluded that there was probable cause to search for them in the suspect's house. *Id.* And, it was for similar reasons that we concluded in *Chamu-Hernandez* that a magistrate was justified in relying on an officer's expertise to establish a nexus between suspected cocaine sales and the suspect's home. 229 Or App at 343-44. In that case, in addition to having twice delivered cocaine to an informant, the suspect had also engaged in apparent drug dealing on a regular basis by "making additional short stops to meet people in parking lots, at businesses, and at residences throughout the Portland metropolitan area." *Id.* at 342. In concluding that such "ongoing drug sales" justified reliance on the affiant's expertise, we distinguished cases like *Wilson,* where "the affidavit established that the defendant had sold drugs in only one instance." *Chamu-Hernandez,* 229 Or App at 343 (citing *Wilson,* 178 Or App at 171-72).

Although, in this case, Ritter's affidavit linked defendant to two cocaine sales rather than one, it did not describe anything resembling the "ongoing drug sales" in *Chamu-Hernandez,* or operations at the "scale and sophistication" of the marijuana grow at issue in *Villagran.* Ritter's information was that defendant was *not* a regular supplier for Benavente and that he was, at most, "small time." Moreover, while the affidavit listed the weights of the baggies of cocaine seized after the second controlled buy involving defendant, Ritter did not explain what, if any, significance those weights carried, such as whether they implied substantial drug operations or low-level sales. Rather than support Ritter's conclusion that more evidence would likely be found at defendant's home, those objective facts only supported the conclusion that defendant was a "drug dealer." Accordingly, we cannot agree with the trial court's conclusion that it was reasonable to infer from defendant's involvement in more than one drug sale that a supply of drugs and related evidence would likely be found anywhere, much less at his home.

In additional authorities, the state suggests that our recent decision in *State v. Heyne / Yunke,* 270 Or App

601, 348 P3d 1170, *rev den*, 258 Or 146 (2015), controls the outcome of this case. That argument, however, is not persuasive. In *Heyne*, an officer noted an odor of marijuana emanating from the defendant's car during a routine traffic stop. *Id.* at 603. During a subsequent consent search, the officer discovered various bags containing a total of 11 ounces of marijuana. *Id.* In the course of their encounter, the defendant showed the officer an expired medical-marijuana card that had authorized him to grow marijuana at his house and told the officer that he had recently applied for a new card. *Id.* at 603-04. In an affidavit requesting a warrant to search the defendant's home, the officer stated that, based on his experience and knowledge, the amount of marijuana in the defendant's possession was a "dealer quantity" and that "'individuals who sell and keep controlled substances, conceal controlled substances * * * within buildings and vehicles under their control.'" *Id.* at 604 (omission in original). A magistrate issued a warrant to search the defendant's home, and the resulting search uncovered evidence of unlawful drug activity that the defendant later moved to suppress. *Id.*

We concluded that the affidavit's contents sufficiently connected the marijuana found in the defendant's car to his home. *Id.* at 605. In reaching that conclusion, we reasoned that, based on the quantity of marijuana found in the defendant's car, together with the officer's informed understanding that 11 ounces was a "dealer quantity," the affidavit established probable cause to believe that the defendant illegally sold drugs. *Id.* And, because the defendant's home was where "he had been authorized * * * to grow and keep marijuana," we concluded that there was probable cause to believe that he was now engaged in illegal drug activity at that location. *Id.* at 605-06.

It is true, as the state points out, that we made the broad statement in *Heyne* that "the affidavit linked [the defendant] to the marijuana in the car and linked [the defendant] to his home, which, in light of the statement in the [officer's] affidavit that people who sell controlled substances conceal them in vehicles and buildings that they control, provided a basis to believe that evidence of marijuana

possession or dealing would be found at [the defendant's] home." *Id.* at 607. However, as just noted, the affidavit in that case expressly connected marijuana growing activity—albeit, previously legal marijuana growing activity—with the defendant's home. *Id.* at 605-06. Thus, unlike this case, in *Heyne*, there was a direct, logical connection between the defendant's illegal activities and the defendant's home, and there was no need for the issuing court to rely exclusively—if at all—on the affiant's training and experience to establish that nexus. *See id.* Accordingly, *Heyne* does not control the outcome here.

In sum, while the objective content of Ritter's affidavit established probable cause to believe that defendant was engaged in illegal drug activity, it contained little, if any, objective information suggesting that evidence of that activity would be found in defendant's home. While we are cognizant of the preference for warrants and our concomitant duty to resolve doubtful or marginal cases in favor of that preference, *see Chamu-Hernandez*, 229 Or App at 341-42, this is not such a case. In this case, the objective facts set forth in the affidavit did not themselves render it likely that additional drug-related evidence would exist somewhere, that it would be found in a particular type of location, and that defendant's home would be such a place. And, while we have previously said that a magistrate may rely on an officer's training and experience to establish the required nexus between suspected criminal activity and a particular place to be searched, that expertise is not a complete substitute for objective facts derived from other sources. Thus, we have consistently required an affiant's training and experience to be sufficiently connected to the objective facts so as not to serve as the sole basis on which to find probable cause to search a given location. Here, that connection was almost completely lacking.

Ritter's affidavit described the objective facts regarding defendant's involvement in drug activity; separately, it described Ritter's training and experience regarding drug traffickers in general. Ritter did not purport to rely on his training and experience to explain the significance of his objective observations. In fact, Ritter's affidavit did not meaningfully tie his expertise to the objective facts in

any way. As a result, that training and experience failed to establish the required nexus between defendant's drug activity and his residence and, therefore, could not support a nonspeculative inference that evidence of that activity would be found in defendant's home.[10] Accordingly, even when we give Ritter's expertise appropriate consideration, we conclude that the collective facts set forth in the affidavit could not support the magistrate's determination that there was probable cause to search defendant's home, and, therefore, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

---

[10] *See State v. Evans*, 119 Or App 44, 46-47, 849 P2d 539 (1993) ("The officer's recitations of his professional experience provided the only link between the residence and the [drug operation]. *** Standing alone, the officer's intuition or professed knowledge of the common practices of [traffickers] is not an additional fact supporting probable cause that *this* particular residence contained any particular evidence." (Emphasis in original.)).