Argued and submitted November 26, 2019, reversed and remanded
October 14, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KORI LEIGH NELSON,
aka Kori L. Nelson,
*Defendant-Appellant.*

Marion County Circuit Court
17CR06369; A167421

476 P3d 100

Defendant appeals, challenging her conviction for unlawful possession of methamphetamine. She challenges the trial court's acceptance of a nonunanimous guilty verdict as violating the Sixth Amendment to the United States Constitution. She also challenges the trial court's denial of her pretrial motion to suppress evidence that law enforcement seized from the bedroom that she shared with her boyfriend, a methamphetamine dealer, while executing a search warrant. Defendant does not contest that the affidavit in support of the warrant created probable cause to search a shipping container located in the backyard of the property, but she contends that it did not create probable cause to search the house, particularly the bedroom. *Held*: The judgment is reversed, because convicting defendant of unlawful possession of methamphetamine based on a nonunanimous jury verdict violated the Sixth Amendment as recently interpreted by the United States Supreme Court. As for defendant's motion to suppress, the trial court erred in denying the motion, because the affidavit did not create probable cause to believe that evidence of drug-dealing activity would be found in the house. Nothing in the affidavit allowed an inference that defendant's boyfriend was keeping drugs or related evidence in any location other than the shipping container.

Reversed and remanded.

Tracy A. Prall, Judge.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

Defendant appeals her conviction for unlawful possession of methamphetamine, ORS 475.894. In seven assignments of error, she challenges the trial court's denial of her motion to suppress, denial of her motion for judgment of acquittal, acceptance of a nonunanimous guilty verdict in violation of the Sixth Amendment to the United States Constitution, and imposition of several probation conditions. For the reasons that follow, we reverse defendant's conviction on Sixth Amendment grounds, which obviates the need to address her probation conditions. We also conclude that the trial court erred in denying defendant's motion to suppress. We affirm without discussion the denial of defendant's motion for judgment of acquittal.

## FACTS

For purposes of the motion to suppress, the parties agree that the only relevant facts are those stated in the affidavit in support of the search warrant. We therefore summarize the pertinent facts from the affidavit, as well as describe what occurred procedurally after execution of the warrant.

Defendant, her longtime boyfriend Blalack, and Blalack's parents live at an address in Jefferson (the Jefferson property). The property contains a single-story house with an attached garage, multiple outbuildings, and a large metal "Conex-style" shipping container situated in the backyard.

In late September, a confidential informant told law enforcement officers that he or she buys methamphetamine from MB, who regularly buys methamphetamine from Blalack; that Blalack also sells methamphetamine to DW; and that Blalack lives in a trailer behind his elderly parents' house in Jefferson.

In October, a person arrested in a "drug bust" told law enforcement officers that he or she had recently purchased more than a quarter pound of methamphetamine from Blalack at a location consistent with the Jefferson property. The person provided the following information. The transaction occurred in a metal Conex-style shipping

container in the backyard of the residence, and the person saw about two pounds of methamphetamine in the shipping container. On previous occasions, the person had purchased only a personal-use amount of methamphetamine from Blalack. Blalack uses the shipping container as a "work-shop." The drugs are kept in a locked box inside the shipping container, which also contains cash. Defendant is Blalack's girlfriend, and Blalack, defendant, and Blalack's parents all live at the residence.

On November 3, a deputy named Miller and another officer surveilled the Jefferson property. In connection with that surveillance, a woman named Konrad was followed and arrested after leaving the property. Konrad admitted to having purchased 1/16 ounce of methamphetamine from Blalack. Konrad considers herself to be friends with both Blalack and defendant, who lives with Blalack. Konrad stated that she had purchased methamphetamine from Blalack about five times. On this occasion, she did not call or text ahead, which is not unusual, as she avoids calling or texting Blalack and defendant "because she does not want to get them in trouble." Konrad told the officers that Blalack has a bedroom in the house but that they "did the deal" in the large metal Conex-style shipping container in the backyard. According to Konrad, Blalack keeps his methamphetamine in a toolbox on a shelf toward the back of the shipping container. Blalack sometimes weighed out methamphetamine in front of her, but, on this occasion, he just took a baggie out of his pocket and gave it to her. Konrad stated that defendant is not involved in the methamphetamine dealing and "usually stays in the house during the transaction" but "comes outside" to smoke with them once the deal is complete.

On November 4, Miller learned from another officer that a confidential informant had done three controlled buys of methamphetamine from Konrad in August. That informant told the officer that Konrad got her methamphetamine from Blalack.

With the foregoing information, Miller applied for a warrant to search the Jefferson property, including the property, residence, curtilage, outbuildings, and other

structures used for storage; any persons located at the property; and any vehicles parked at or in front of the property that could be connected to an occupant of the property. Miller requested to search for, among other things, controlled substances, processing and distribution equipment, written records and documents, items of identification, latent prints, illegal proceeds, computer tapes and disks, travel records, financial statements, ownership and registration documents, safe deposit and storage unit records and keys, firearms, and any cellular phones belonging to Blalack or defendant. In addition to the facts specific to this case, Miller provided an extensive recitation of his knowledge from training and experience, including that people who possess and distribute controlled substances will likely keep controlled substances in their vehicles, in their residences, on their property, or in buildings under their control; routinely conceal controlled substances, packaging material, equipment, and business records in their homes, in outbuildings, on their persons, and in vehicles; maintain a stock of controlled substances to sell; often sell more than one type of controlled substance; are likely to keep cash on hand; and use cellular phones to be readily accessible to customers and suppliers.

A magistrate issued the requested warrant to search the Jefferson property for evidence of delivery and possession of methamphetamine and frequenting a place where controlled substances are used.[1] The warrant was executed the same day. Among other areas, the officers searched the house. They apparently did not find any evidence of drug dealing in the house, but they did find evidence of personal use in defendant and Blalack's bedroom. Specifically, they found three glass pipes (one of which was broken) and an empty plastic baggie under the bed, and a broken glass pipe next to a nightstand, all of which later tested positive for methamphetamine residue.

---

[1] Both parties focus on the warrant's authorization to search for evidence of drug distribution (drug dealing), and neither party specifically discusses its authorization to search for evidence of drug possession or frequenting a place where controlled substances are used. Accordingly, we do the same. We note, however, that Miller's affidavit did not contain any additional evidence relevant to possession or frequenting.

Defendant was charged with one count of unlawful possession of methamphetamine. Before trial, she moved to suppress the evidence from the bedroom on the basis that the warrant's authorization to search the house was not supported by probable cause, but the trial court denied the motion. Defendant proceeded to a jury trial, during which she requested a unanimous-verdict instruction; however, consistent with controlling law at the time, the trial court instructed the jury that it could return a nonunanimous verdict. The jury found defendant guilty by an 11-1 vote, and, based on that verdict, the trial court entered a judgment of conviction.

## NONUNANIMOUS JURY VERDICT

Defendant contends that the trial court erred by instructing the jury that it could return a nonunanimous verdict and by accepting a nonunanimous verdict on the only count of the indictment. The state concedes that the trial court erred. Convicting a person of a serious offense based on a nonunanimous jury verdict violates the Sixth Amendment. *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). We therefore reverse defendant's conviction on Sixth Amendment grounds.

## MOTION TO SUPPRESS

We next address defendant's motion to suppress, as relevant to a new trial. Defendant argues that the trial court erred in denying her motion to suppress the evidence seized from the bedroom, because the search warrant was issued without probable cause to search the house. *See* Or Const, Art I, § 9 ("[N]o warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.").[2] The state defends the trial court's ruling, asserting that the affidavit supporting the warrant contained sufficient facts from which a neutral magistrate could conclude that evidence of drug dealing would probably be found inside the house.

---

[2] Defendant relies on both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. Because our analysis under the former is dispositive, we do not reach the latter.

An application for a search warrant "shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in places * * * to be searched." ORS 133.545(6). An affidavit's sufficiency to support the issuance of a warrant is a question of law. *State v. Klingler*, 284 Or App 534, 539, 393 P3d 737 (2017). The determination "involves two questions: (1) whether there is reason to believe that the facts stated are true, and (2) whether the facts and circumstances disclosed by the affidavit, if true, are sufficient to establish probable cause to justify the search requested." *State v. Goodman*, 328 Or 318, 324-25, 975 P2d 458 (1999) (internal quotation marks omitted). Here, only the second question is at issue.

In conducting our review, we rely on the facts set forth in the affidavit, together with any reasonable inferences that those facts support. *State v. Webber*, 281 Or App 342, 347, 383 P3d 951 (2016). "A probable cause determination is based on the totality of the circumstances." *State v. Fronterhouse/Conant*, 239 Or App 194, 200, 243 P3d 1208 (2010). "To be sufficient, an affidavit in support of a warrant must permit a conclusion by a neutral and detached magistrate that the items specified in the warrant will probably be found in a specified place to be searched." *State v. Wilson*, 178 Or App 163, 166-67, 35 P3d 1111 (2001). The standard of probability "requires more than a mere possibility, but less than a certainty." *Id.* at 167 (citation omitted). In other words, "the standard of probability requires the conclusion that it is more likely than not that the objects of the search will be found at the specified location." *State v. Williams*, 270 Or App 721, 725, 349 P3d 616 (2015) (internal quotation marks omitted).

We view the affidavit "in a commonsense, nontechnical and realistic fashion," with doubtful cases to be resolved in favor of the magistrate's determination of probable cause. *Klingler*, 284 Or App at 540; *see also State v. Henderson*, 341 Or 219, 225, 142 P3d 58 (2006) ("While adhering to the probable cause requirement, we resolve doubtful or marginal cases in favor of the preference for warrants.").

There is no question that Miller's affidavit permitted a magistrate to conclude that evidence of Blalack's drug dealing would probably be found in the shipping container in the backyard of the Jefferson property. The question is whether it also permitted a magistrate to conclude that evidence of Blalack's drug dealing would probably be found in the house on the Jefferson property. "[P]robable cause exists only if the affidavit sets forth facts that create a nexus between the place to be searched and the objects to be found." *Webber*, 281 Or App at 348. Here, the affidavit had to establish probable cause to believe both (1) that there was a connection between the owner or occupant of the home and the suspected drug activity, and (2) that evidence of that drug activity would be found in the house. *Id.* (describing the "test" articulated by the Supreme Court in *Goodman*, 328 Or at 325, to determinate whether an affidavit established probable cause to search a defendant's home for evidence of drug activity).

We readily conclude that Miller's affidavit established probable cause to believe that one of the owners or occupants of the house—Blalack—was connected with drug-dealing activity. We agree with defendant, however, that the affidavit did not establish probable cause to believe that evidence of Blalack's drug-dealing activity would be found in the house.

We have expressly rejected a blanket rule that, "if there is probable cause to suspect that a person has committed a crime, an officer need only cite his or her training and experience to establish probable cause to believe that evidence of the crime will be found at the person's home." *Webber*, 281 Or App at 350; *see also, e.g.*, *State v. Miller*, 254 Or App 514, 527-28, 295 P3d 158 (2013) (concluding that affidavit did not establish probable cause to search the defendant's home for evidence of drug dealing, where, on three recent occasions, the defendant had driven directly from his residence to meet someone to sell a small amount of methamphetamine from his vehicle); *Wilson*, 178 Or App at 165-66 (concluding that affidavit did not establish probable cause to search the defendant's home for evidence of drug dealing, after he sold drugs to someone at a location other

than his home, because there was insufficient evidence to create a nexus between his drug dealing and his home, notwithstanding the affiant's recitation of his "training and experience with people who traffic in drugs" and attestation "that such individuals usually have hidden 'on their property, person, or in their vehicles' evidence of their drug dealing").

Rather, whether probable cause exists to search a specific place for evidence of drug dealing depends on the facts of the particular case, as described in the warrant affidavit. *Webber*, 281 Or App at 350 (recognizing that a "nuanced, case-by-case assessment" is required); *see also Wilson*, 178 Or App at 171 ("[T]he weight to be given to [training and experience] representations depends on the totality of the facts contained in the affidavit[.]"). Here, in keeping with the case law, the state does not argue that Miller's generalized attestations based on training and experience were enough to establish the necessary nexus between Blalack's suspected drug dealing and the house on the Jefferson property.[3]

As for the affidavit more generally, Miller's affidavit establishes the precise location where Blalack stores his drugs and cash and conducts drug transactions: the shipping container located in the backyard of the Jefferson property. Nothing in Miller's affidavit allows an inference that Blalack is keeping drugs or related evidence in any location other than the shipping container. *Cf. Miller*, 254 Or App at 528 (holding that facts in affidavit were insufficient to support a warrant to search the defendant's house for evidence of drug dealing, where the defendant was selling drugs from his vehicle, and the affiant's general averments about drug dealers were insufficient to establish that, "where a person is using a *vehicle* to engage in drug transactions, evidence of possession, manufacturing, or distribution is likely to be located at his *residence*" (emphasis in original)).

The state makes essentially two arguments in favor of a contrary conclusion, neither of which we find persuasive.

---

[3] We refer to the state's arguments in its answering brief on appeal. In the trial court, the prosecutor relied more heavily on Miller's training and experience, but the trial court appears to have largely discounted those arguments.

First, the state points to facts in Miller's affidavit that argu-
ably allow an inference that some of Blalack's customers
called or texted him on his cell phone to arrange to come
over to purchase drugs. From there, the state argues that
a "commonsense reading of the affidavit suggests that
Blalack kept the phone on his person, which was, more often
than not, inside the residence he shared with defendant."
Even assuming that Blalack used his cell phone to con-
duct drug-dealing activity, we flatly reject the notion that,
whenever probable cause exists to believe that a person is
engaged in drug dealing and uses a cell phone in connection
with that activity, it follows that probable cause exists to
search that person's home for any evidence of drug dealing,
because it is common for people to keep their cell phones on
their persons, including when they are at home. A suspected
drug dealer's use of a cell phone is not enough, in and of
itself, to obtain a warrant to search his or her home for any
and all evidence of drug dealing.

      The state's other argument is that it is reasonable
to infer from the facts in the affidavit that Blalack sold
methamphetamine "primarily" from the shipping container
and conducted "larger sales" from the shipping container
but that it is "more likely than not that he also conducted
smaller transactions like Konrad's inside his residence."
The difficulty with that argument is that it finds no support
in Miller's affidavit.

      Notwithstanding Miller's ambiguous use of the
term "residence"—sometimes using it to refer to the entire
Jefferson property—it is readily apparent from a com-
monsense reading of Miller's affidavit as a whole that the
only drug sales known to law enforcement occurred in the
shipping container. Both informants who had purchased
drugs directly from Blalack described the transactions as
occurring in the shipping container. The unidentified infor-
mant expressly stated that the most recent transaction had
occurred in the shipping container, and he or she said nothing
to suggest that the prior smaller transactions had occurred
in a different location. As for Konrad, she expressly stated
that the small transaction on November 3 had occurred in
the shipping container, and the only reasonable inference

from her other statements—including that Blalack kept the methamphetamine on a shelf in the shipping container, that he had weighed it in front of her in the past, and that defendant stayed in the house and would only "come out" to smoke with them once the transaction was complete—is that all of her transactions with Blalack occurred in the shipping container. There are simply no facts in the affidavit that would allow an inference that Blalack conducted any drug-dealing activity in the house.

Finally, although the state defends it only indirectly, we briefly address the trial court's own reasoning for its ruling. The trial court appears to have read Miller's affidavit as allowing an inference that Blalack would meet customers at the house and then walk with them to the shipping container, as well as an inference that, on November 3, Blalack came out of the house with a baggie of methamphetamine in his pocket and then walked to the shipping container with Blalack to conduct the transaction. Even assuming arguendo that such facts would establish probable cause to search the house, we are unable to reconcile the trial court's reading of the affidavit—a reading that was urged by the prosecutor—with the actual content of Miller's affidavit, which is controlling. *See State v. Chamu-Hernandez*, 229 Or App 334, 341, 212 P3d 514 (2009) ("Our review is based on the facts before the issuing court. Thus, we grant no deference to the *trial court's* findings or conclusions, but we allow all inferences that the *issuing court* may have fairly drawn from the facts in the affidavit when that affidavit is read in a common-sense, nontechnical, and realistic fashion." (Emphases in original; internal citation omitted.)). Viewing the affidavit as a whole and in a commonsense manner, we conclude that those inferences cannot be fairly drawn from the facts stated in the affidavit.

In sum, based on Miller's affidavit, the only evidence was that Blalack was dealing methamphetamine out of the shipping container in the backyard of the Jefferson property, including storing his drugs and cash there. Nothing in the affidavit established a probability that there would be evidence of Blalack's drug-dealing activity in the house that he shared with his parents and defendant or, more

specifically, the bedroom that he shared with defendant.[4] This is not a doubtful or marginal case. *See Henderson*, 341 Or at 225 ("While adhering to the probable cause requirement, we resolve doubtful or marginal cases in favor of the preference for warrants."). Because the affidavit was insufficient to support authorizing a search of the house, the trial court erred in denying defendant's motion to suppress the evidence seized from her bedroom.

Reversed and remanded.

---

[4] Of course, on different facts, it might be reasonable to infer that a person's drug-dealing activity extended to the entire property. *See, e.g.*, *State v. Marsing*, 244 Or App 556, 562-63, 260 P3d 739 (2011) (holding that facts in affidavit were sufficient to establish that an informant had purchased drugs from the defendant at his house at a particular address); *State v. Chase*, 219 Or App 387, 392, 182 P3d 274 (2008) (stating that, "[g]enerally, a building's proximity to the home of a person who is suspected of possession of controlled substances establishes the requisite nexus" but that, "when a building is owned or occupied by persons other than those suspected of criminal activity, something more than mere proximity is required," and holding that probable cause existed to support a warrant where, among other things, at least one drug sale had occurred inside the defendant's house, even though most of the sales were conducted from a trailer on the property).