***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted May 24, reversed and remanded August 3, petition for review denied November 23, 2022 (370 Or 471)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

CARLOS ALBERTO MACIEL-SALCEDO,
*Defendant-Respondent.*

Marion County Circuit Court
20CR36863; A174933

Tracy A. Prall, Judge.

Christopher A. Perdue, Assistant Attorney General, argued the cause for appellant. On the briefs were Ellen F. Rosenblum, Attorney General; Benjamin Gutman, Solicitor General; and Philip Thoennes, Assistant Attorney General.

Daniel C. Silberman argued the cause for respondent. Also on the brief were Zachary J. Stern and Ferder Casebeer French, Stern & Gipson, LLP.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

The state appeals from a pretrial order suppressing evidence seized after police officers executed a search warrant at defendant's hotel room. ORS 138.045(1)(d). The trial court initially denied defendant's motion to suppress evidence obtained from the warrant search but reconsidered its ruling and granted the motion after we issued our opinion in *State v. Nelson*, 307 Or App 226, 476 P3d 100 (2020). Because we conclude that the trial court's initial ruling was correct, and that *Nelson* is inapposite to this case, we reverse and remand.

We describe the relevant facts from the affidavit of Detective Anthony Burke in support of the search warrant, omitting information obtained from an unlawful "protective sweep" of the room. Salem police received a tip that a woman known as "Rosie" was about to acquire 10 pounds of methamphetamine from California for distribution. Detective Burke obtained a pen register trap and trace for Rosie's phone, which revealed that the phone was located in the vicinity of Los Angeles, California. The phone then was traced north on Interstate 5 to Rosie's apartment.

Detectives used a confidential reliable informant (CRI) to set up a controlled buy with Rosie. The CRI went to Rosie's apartment, but Rosie said that she had to go to Room 333 at the La Quinta Inn and Suites before completing the sale, where she said there were "three cartel members." Another detective, Brian Bidiman, went to the hotel and stood in the hallway near Room 333. When Rosie arrived, she made a cellphone call; at the same time, Bidiman heard the room phone ring, then saw two men, later identified as defendant and his brother, exit the room. The men went to the parking lot and met with Rosie, where an officer observed Rosie place something in defendant's brother's hat. Rosie then asked the CRI to meet her at a nearby store, where she gave the CRI a quarter pound of methamphetamine.

Bidiman contacted the front desk of the hotel and found out that Room 333 was registered to defendant and two guests and associated in the hotel registry with a brown Dodge Ram. Soon after, detectives observed defendant and

a third man leave the hotel and get into the brown Dodge Ram. Detectives arrested them, and one saw a notification on the screen of defendant's phone for a text message from "Rosie."

Those facts establish a nexus between suspected drug dealing activity and Room 333. *Nelson*, 307 Or App at 233 ("Probable cause exists only if the affidavit sets forth facts that create a nexus between the place to be searched and the objects to be found.") (Citation omitted.) The affidavit supported a reasonable inference that evidence of drug dealing was likely to be found in the hotel room. Rosie specifically identified Room 333 as where she needed to go before she could complete the controlled buy, and apparently called the room upon arrival at the hotel. Immediately after that, defendant and his brother left the room to meet with Rosie in the parking lot, where detectives observed them engage in activity consistent with a transaction. Rosie, now in possession of methamphetamine, then completed the controlled buy with the CRI. That sequence of events, combined with the other evidence in the warrant application, creates probable cause that evidence of a drug dealing operation would be found in Room 333.

The search warrant in *Nelson*, on the other hand, covered a house, curtilage, and outbuildings, which included a shipping container in the back yard. *Id*. at 230. We reversed the trial court's denial of the defendant's motion to suppress evidence seized from the house, because all of the evidence pointed to the shipping container as the probable location of evidence of drug dealing, and no evidence suggested that the residence contained such evidence. *Id*. at 236. Because the evidence here was directly connected to Room 333, the trial court's initial ruling was correct, and *Nelson* does not compel a different result.

Reversed and remanded.