128 July 31, 2024 No. 527

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CAROLYNE DEE COLGROVE,
*Defendant-Appellant.*

Linn County Circuit Court
20CR12369; A177892

Thomas McHill, Judge.

Argued and submitted August 21, 2023.

Emily P. Seltzer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Reversed and remanded.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for possession of methamphetamine, ORS 475.894. Defendant's conviction was the result of a conditional no contest plea, which reserved her right to appeal the trial court's denial of her motion to suppress evidence obtained during the warranted search of her apartment and her motion for reconsideration of that denial. On appeal, defendant raises two assignments of error. In the first, she argues that the trial court erred in denying her motion to suppress evidence obtained from the warranted search of her apartment. She asserts that the search warrant was invalid under ORS 133.565(2), Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution because the supporting affidavit did not establish a sufficient nexus between any drug activity and the apartment.[1] In the second, she argues that the trial court erred when it denied her motion for reconsideration of the denial of her motion to suppress. We conclude that the search warrant affidavit did not establish probable cause to search the apartment, and, as a result, the trial court erred in denying defendant's motion to suppress. We therefore reverse and remand. In light of that disposition, we do not reach defendant's second assignment of error.

Police were investigating Phillips, defendant's cotenant, for drug activities. As part of that investigation, they sought a warrant to search the apartment where defendant and Phillips lived. The affidavit reflected that, prior to seeking the residential search warrant, police had observed Phillips exiting the apartment and selling controlled substances to a confidential reliable informant (CRI) in three controlled buys at undisclosed locations outside

---

[1] ORS 133.565(2)(b) and (c) provide that "[t]he warrant shall state, or describe with particularity * * * [t]he name of the person to be searched, or the location and designation of the premises or places to be searched," and "[t]he things constituting the object of the search and authorized to be seized." Similarly, Article I, section 9, provides that "no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized," and the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

the residence. Because the information in the affidavit, or rather, the lack of it, is dispositive in this case, we discuss the affidavit in some detail.

After discussing his training and experience, Detective Posthuma (affiant) explained that during the two months prior to seeking the search warrant, he had spoken with a CRI who agreed to purchase drugs from Phillips in a controlled-buy format. The affiant presented the reasons for which he considered the CRI to be reliable, as well as the precautions that police took to ensure that the CRI was not in possession of controlled substances, money, or weapons before leaving custody and upon returning to police custody after the controlled buy. The affiant further recounted that prior to seeking the search warrant he had verified information that the CRI had supplied and reviewed Phillips's criminal history, noting that Phillips had prior drug crime convictions.

The affiant then presented information about each controlled buy. Of the first controlled buy, the affiant explained:

> "Detective Jered McLain [(McLain)] told me he observed [Phillips] exit his apartment \*\*\*. Detective Ty Volin told me he observed [Phillips] meet CRI. [McLain] told me that he observed [Phillips] break contact with CRI. [McLain] told me he observed [Phillips] walk back into his apartment \*\*\*."

The affiant described the second controlled buy as follows:

> "[McLain] told me that he observed [Phillips] exit his apartment \*\*\*. [McLain] told me he observed [Phillips] enter the driver seat of [a vehicle]. [McLain] told me he observed [Phillips] start driving the vehicle and exit the parking lot as the only occupant of the vehicle. I observed [Phillips] arrive at the pre-arranged meet location and meet CRI, by arriving at the location. I observed CRI get into [Phillips's vehicle]. A short time later I observed CRI exit. [Phillips] was followed back to his residence by detectives and [McLain] told me he observed [Phillips] go back into his apartment \*\*\*."

Finally, the affiant described the third controlled buy as follows:

"[McLain] told me that he observed [Phillips] exit his apartment * * *. [McLain] told me he observed [Phillips] enter the driver seat of [the same vehicle Phillips used in the second controlled buy]. [McLain] told me he observed [Phillips] start driving the vehicle and exit the parking lot. I observed [Phillips] arrive at the pre-arranged meet location and meet CRI, by arriving at the location. I observed CRI make contact with [Phillips]. A short time later I observed CRI exit.

"[Phillips] was followed back to his residence by detectives and Lieutenant Jerry Drum told me he observed [Phillips] go back into his apartment * * *."

The affiant additionally said that during surveillance of "one of the above-mentioned controlled buys," he watched Phillips park a different vehicle and get into the vehicle in which he travelled to the second and third controlled buys. The affiant explained, "CRI has told me that [Phillips] operates several different vehicles and travels with his supply of methamphetamine while he travels in vehicles."

The magistrate issued a search warrant for the apartment where Phillips and defendant lived. When police executed that warrant, they found inculpatory evidence. Defendant and Phillips were both charged with drug related offenses.

Defendant moved to suppress the evidence found at the apartment, arguing that the search warrant affidavit did not establish probable cause to search the apartment. Specifically, defendant argued that there was an insufficient nexus between Phillips's drug sales and the apartment. The trial court disagreed and denied defendant's motion to suppress. Defendant thereafter entered a conditional no contest plea, reserving the right to appeal the denial of her motion to suppress and motion for reconsideration of that denial. This appeal followed.

In defendant's first assignment of error, she argues that the search warrant affidavit did not provide a sufficient nexus between the apartment and Phillip's drug transactions. We review "a challenge to the sufficiency of an affidavit supporting a magistrate's issuance of a warrant" for legal error. *State v. Castilleja*, 345 Or 255, 264, 192 P3d 1283, *adh'd*

*to on recons*, 345 Or 473, 198 P3d 937 (2008). In that review, we "determin[e] whether, given the uncontroverted facts in the affidavit and reasonably derived inferences, the issuing magistrate reasonably could have concluded that the affidavit *** established probable cause to search." *State v. Miller*, 254 Or App 514, 516, 295 P3d 158 (2013) (internal quotation marks omitted); *see also Castilleja*, 345 Or at 270-71 (explaining that "to uphold the warrant, the reviewing court need only conclude that the issuing magistrate reasonably could conclude that the facts alleged, together with the reasonable inferences that fairly may be drawn from those facts, establish that seizable things probably will be found at the location to be searched" (emphasis omitted)). "We view the affidavit in a commonsense, nontechnical and realistic fashion, with doubtful cases to be resolved in favor of the magistrate's determination of probable cause." *State v. Nelson*, 307 Or App 226, 232, 476 P3d 100 (2020) (internal quotation marks omitted).

Because defendant does not challenge the veracity of the facts in the affidavit, our inquiry is limited to "whether the facts and circumstances disclosed by the affidavit *** are sufficient to establish probable cause to justify the search requested." *Id.* (internal quotation marks omitted). "[A]s relevant here, probable cause exists only if the affidavit sets forth facts that create a nexus between the place to be searched and the objects to be found." *State v. Webber*, 281 Or App 342, 348, 383 P3d 951 (2016).

We conclude that the facts in the affidavit did not create a sufficient nexus between the apartment and the suspected drug activity. The affidavit provided that during each of the controlled buys, one officer observed Phillips exiting the apartment, and at some unknown time later, a different officer observed Phillips meeting up with the CRI at an undisclosed location to distribute drugs. The affidavit did not show that police observed Phillips's travel path to the undisclosed locations, nor that police ensured that Phillips did not stop somewhere prior to meeting the CRI. In addition, the affiant did not discuss the distance between the apartment and the undisclosed locations, nor how much time elapsed between Phillips leaving the apartment and arriving at those locations.

Confronted with a similar set of facts in *Miller*, we concluded that an "affidavit [was] insufficient to permit a magistrate reasonably to conclude that it [was] more likely than not that the evidence sought in the warrant would be found at [the] defendant's residence." 254 Or App at 528. In that case, the state charged the defendant with multiple drug-related offenses after police executed a search warrant on his car and his residence and found inculpatory evidence in both. *Id.* at 519-20. The affidavit in support of the search warrant recounted three controlled buys. *Id.* at 517. The first two controlled buys were not connected to the residence. *Id.* at 517-18. However, before the third controlled buy, officers surveilled the defendant's residence, during which they watched the defendant leave the residence and walk directly to his vehicle. *Id.* at 518. Police then followed the defendant as he travelled directly to the location of the controlled buy and made the sale. *Id.* In concluding that the affiant had not established a sufficient nexus between the residence and the suspected drug activity, we explained,

> "[A]t most, [the] affidavit established that (1) [the] defendant sold a small amount of methamphetamine to the [undercover informant] during each of three controlled drug buys that occurred within two weeks of issuance of the warrant at an undisclosed location; (2) [the] defendant lived at the residence ***; and (3) [the] defendant drove directly from that residence to the third controlled buy and returned thereafter."

*Id.* at 527. We cited as dispositive that "[t]he drug activity *** did not occur at [the] defendant's residence. Instead, each of the three controlled buys occurred at an undisclosed location other than defendant's residence." *Id.* at 528.

Here, like in *Miller*, "each of the three controlled buys occurred at an undisclosed location other than defendant's residence." *Id.* More so than *Miller*, the affidavit in the present case did not establish that Phillips travelled directly from the apartment to the *any* of the controlled buys. *Id.* Although an officer observed Phillips leaving the apartment some undisclosed amount of time prior to all three buys, the affidavit did not establish what occurred between Phillips leaving the apartment and arriving at the three buys. The mere fact that Phillips left the apartment

and then sometime later arrived at a controlled buy does not lead to a reasonable inference that "it [was] more likely than not that the objects of the search [would] be found" in the apartment. *Nelson*, 307 Or App at 232 (internal quotation marks omitted). Thus, we conclude that the facts in the affidavit, alone, did not permit a magistrate to determine that it was more likely than not that evidence of Phillips's drug activity would be found in the apartment.

We further conclude that the affiant's discussion of his training and experience did not bridge the gap to "establish probable cause to justify the search requested." *Id.* (internal quotation marks omitted). We have explained that "the significance of [an affiant's] training and experience * * * depends on the degree to which it was connected to the affidavit's objective content and may have assisted the magistrate's understanding of that content," which in turn is "largely dependent upon the strength of that underlying content." *Webber*, 281 Or App at 352. Here, the affiant's "training and experience averments do not contribute the necessary factual nexus," because "there is nothing in the affidavit * * * permitting and supporting a nonspeculative inference" that evidence of Phillips's drug offenses would be found in the apartment. *Miller*, 254 Or App at 528. Restated, the underlying facts are too lean for the affiant's general statements of training and experience to "shore up [the] affidavit's objective content." *Webber*, 281 Or App at 352 (internal quotation marks omitted); *see also Nelson*, 307 Or App at 233 (explaining that Oregon courts have "expressly rejected a blanket rule that, if there is probable cause to suspect that a person has committed a crime, an officer need only cite his or her training and experience to establish probable cause to believe that evidence of the crime will be found at the person's home." (Internal quotation marks omitted.)); *contra State v. Soto-Sarabia*, 333 Or App 46, 53, ___ P3d ___ (2024) (explaining that "the objective facts in the affidavit * * * and the connection between those objective facts and [the affiant's] training and experience * * * established probable cause to believe that evidence of drug activity would be found in defendant's car").

In reaching our conclusion, we reject the state's argument that under a "commonsense and realistic reading

of the affidavit," the absence of information about the route and length of travel time between the apartment and the controlled buys "suggests that Phillips did not make any significant detours or stops between his apartment and the meeting place," thereby allowing the magistrate to reasonably infer a nexus between suspected drug activity and the apartment. That argument turns the warrant requirement on its head. Warrant affidavits are required to *provide* information to a magistrate so that the magistrate can make an independent decision about probable cause. ORS 133.545(6) (stating that an application for a search warrant "shall be supported by one or more affidavits *particularly setting forth the facts and circumstances* tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched" (emphasis added)). The complete absence of facts does not fulfill that requirement. *See Webber*, 281 Or App at 349 (concluding "that the absence of objective facts connecting that illegal activity to [the] defendant's home foreclosed the conclusion that the affidavit provided a sufficient nexus to that location"); *see also State v. Melendy*, 49 Or App 441, 444, 619 P2d 952 (1980) ("Probable cause must be determinable from the facts recited in the 'four corners' of the affidavit."). A magistrate cannot infer probable cause from an absence of facts, especially when, as here, there are any number of reasons why the affidavit did not provide critical information, such as the route Phillips took or the amount of time it took him to travel between the apartment and the sites of the controlled buys, and not all of them are favorable to the police.

Here, the only drug sales known to police occurred at undisclosed locations away from the residence and, considering the absence of information about Phillips's journey from the apartment to the controlled buys, "[t]here are simply no facts in the affidavit that would allow an inference that [Phillips] conducted any drug-dealing activity in the house." *Nelson*, 307 Or App at 236. We conclude that the affidavit did not establish probable cause to search the apartment because it did not establish a sufficient nexus between Phillips's drug activity and the apartment. *See id.* ("Viewing the affidavit as a whole and in a commonsense manner, we conclude that those inferences cannot be fairly drawn from

the facts stated in the affidavit."); *Miller*, 254 Or App at 528 ("In sum, the affidavit [was] insufficient to permit a magistrate reasonably to conclude that it is more likely than not that the evidence sought in the warrant would be found at defendant's residence."). We therefore conclude that the trial court erred when it denied defendant's motion to suppress evidence obtained during the residential search.

Reversed and remanded.