No. 425 May 14, 2025 459

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
Plaintiff-Respondent,

v.

JASON ALEXANDER GASKILL,
aka Jason Alexander Gaskall, aka Jason Alexander
Gaskil,
aka Jason Alexander Gaskill III,
Defendant-Appellant.
Klamath County Circuit Court
20CR32110, 21CR55357
A180589 (Control), A180590

Dan Bunch, Judge pro tempore (January 6, 2023 Judgment).

Stephen R. Hedlund, Judge (March 15, 2023 Judgment and April 7, 2023 Judgment).

Submitted October 23, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and John Evans, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

In Case No. 21CR55357, reversed and remanded. In Case No. 20CR32110, remanded for resentencing; otherwise affirmed.

**SHORR, P. J.**

In this consolidated criminal appeal, defendant appeals from the judgment of conviction in Case No. 21CR55357 for unlawful delivery of methamphetamine and felon in possession of a firearm entered following defendant's conditional guilty plea. He also entered a conditional guilty plea in Case No. 20CR32110, and does not challenge the judgment in that case. He was sentenced together in both cases. Defendant argues that the trial court erred in Case No. 21CR55357 in denying his motion to suppress evidence obtained pursuant to a search warrant because the warrant (1) lacked probable cause and (2) was insufficiently particular. We first reject defendant's argument that the warrant was unsupported by probable cause. However, we ultimately agree with defendant that the warrant lacked sufficient particularity, and, as a result, we conclude that the trial court erred in denying defendant's motion to suppress. Accordingly, we reverse and remand in Case No. 21CR55357, and we remand for resentencing in Case No. 20CR32110.

## I.   FACTS

On appeal, "we consider only those facts put before the magistrate in the supporting affidavit, along with reasonable inferences that can be drawn from them." *State v. Curry*, 336 Or App 72, 76, 560 P3d 694 (2024). On November 1, 2021, Sergeant Barden, an officer with the Basin Interagency Narcotics Enforcement Team (BINET), applied for a warrant to search defendant and his residence, vehicle, and cell phone. In the affidavit in support of the warrant, Barden set forth his training and experience, and then described his investigation into defendant.

Barden explained that he received information from a confidential informant (CI) who was "cooperating with law enforcement for sentencing consideration on felony drug charges." In mid-2021, the CI told Barden that defendant "was bringing a large amount of methamphetamine into Klamath Falls from California and selling it." Two other individuals with unknown reliability corroborated that information. The CI also told Barden that they could

purchase methamphetamine from defendant and had done so on their own before.

Under Barden's direction, the CI made two controlled buys of "a dealer amount of methamphetamine" from defendant at defendant's residence. The CI set up the drug deals by contacting defendant via his cell phone number. The first controlled buy occurred in the fall of 2021. Barden provided the CI with documented buy money to make the purchase, and searched the CI and their vehicle before and after, finding no unaccounted-for contraband or currency. Detectives observed the CI enter defendant's residence and exit a short time later. The CI gave Barden a baggie containing over 10 grams of a substance that tested positive as methamphetamine. The CI said that they exchanged the buy money for the methamphetamine from defendant, and that they observed much more methamphetamine inside defendant's residence. The second controlled buy occurred in late October 2021, following similar procedures as the first purchase. Again, the CI purchased over 10 grams of a substance which tested positive as methamphetamine.

The affidavit also described an October 2021 report made by "a concerned citizen" of unknown reliability to the Klamath County Sheriff's Office. The individual was a neighbor of defendant who was "concerned about the safety of their neighborhood and did not receive any compensation for their information." The individual told Barden that they suspected defendant was dealing drugs out of his mobile home, that there was a lot of short-term traffic in and out of the home, and that they had recently observed a hypodermic syringe "in the street near [defendant's] mobile home." Barden also stated that in the several months prior to applying for the warrant, BINET conducted sporadic surveillance on defendant's residence, observing intermittent short-term traffic at the home. The surveillance team also noted that defendant was "gone for a day or two at times from Klamath Falls."

Based on that information, Barden asserted that he had probable cause to believe that defendant was involved in "ongoing criminal activity including" the crimes of unlawful possession and distribution of methamphetamine. On

November 1, 2021, a judge issued the warrant authorizing the search of defendant's home, person, vehicle, and cell phone for evidence which "may include, but is not limited to" 13 specified search categories.

On November 10, 2021, law enforcement officers executed the warrant, seizing various items from defendant's residence. The state charged defendant with unlawful manufacture, delivery, and possession of methamphetamine, and felon in possession of a firearm. Defendant moved to suppress evidence seized pursuant to the warrant arguing that (1) unreliable hearsay statements obtained from unnamed informants must be stricken, (2) the facts in the affidavit were stale, and (3) the warrant was insufficiently particular. The trial court denied the motions to suppress. As for the hearsay statements from confidential informants, the court denied the motion without much explanation, but did note that the reliability of an informant can be established through the controlled buy process. Next, the court concluded that the facts in the affidavit were not stale because "there was ample evidence in the affidavit that large amounts of methamphetamine were being bought and sold in the place to be searched, and that the criminal operation was ongoing and continuous." Finally, the court determined that the warrant was not insufficiently particular because:

> "it was specifically limited to the search of defendant's home and vehicle for evidence related to the crimes of Unlawful Possession and Delivery of Methamphetamine, as well as drug related cell phone data. In addition, the warrant only granted authority to search for drug related cell phone data in a very specific date range that related directly to the time period before, after, and wherein law enforcement had undertaken its investigation and undertaken two controlled buys."

Following the denial of the motions to suppress, defendant entered conditional guilty pleas to the charges of unlawful delivery of methamphetamine and felon in possession of a firearm, reserving the right to challenge the court's denial of pretrial motions. ORS 135.335(3). The court accepted his pleas and dismissed the remaining charges as indicated in the plea agreement. This appeal followed.

## II.   ANALYSIS

On appeal, defendant challenges the trial court's denial of his motion to suppress. He raises two main arguments—that the affidavit failed to establish probable cause and that the warrant lacked particularity. More specifically, he contends that two of the CI's statements must be excised, and that the information in the affidavit, without those statements, was too stale to establish probable cause. Next, he also argues that the search category authorizing the search of defendant's cell phone and the warrant as a whole both lacked sufficient particularity. We address those arguments in turn.

A.   *Probable Cause*

We begin with defendant's argument that certain unreliable hearsay statements must be excised from the affidavit. He objects to two statements made by the CI: (1) an assertion from mid-2021 that defendant was bringing a large amount of methamphetamine into Klamath Falls from California and selling it, and (2) an assertion made after the first controlled buy that there was much more methamphetamine visible inside defendant's residence. He contends that with those two statements excised, the remaining information in the affidavit was stale and insufficient to establish probable cause.

An affidavit which relies on information provided by an unnamed informant must demonstrate both of the following: (1) the informant's basis of knowledge; and (2) either the informant's credibility or the reliability of the information. ORS 133.545(6);[1] *State v. Young*, 108 Or App 196, 201, 816 P2d 612 (1991), *rev den*, 314 Or 392 (1992). If either prong is not satisfied, the informant's statement must be stricken from the affidavit. *See State v. Keerins*, 197 Or App 428, 433-34, 106 P3d 166, *rev den*, 338 Or 681 (2005) (excising statement for not establishing basis of knowledge); *State v. Worsham*, 114 Or App 170, 174, 834 P2d 1033, *rev den*, 314 Or 574 (1992) (excising statement for lack of reliability).

---

[1] ORS 133.545(6) provides in relevant part: "If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

We begin with the first statement asserting that defendant was bringing methamphetamine into Oregon from California and selling it. The CI's statement was corroborated by two other unnamed informants, which provides a basis for the reliability of the statement. *See State v. Dunning*, 81 Or App 296, 300, 724 P2d 924 (1986) ("Corroboration * * * by co-informants can establish an unnamed informant's reliability."). However, the affidavit sets forth no facts demonstrating how the CI or the two other individuals obtained that information. Because the affidavit does not establish a basis of knowledge, the informants' statement must be stricken from the affidavit. *Keerins*, 197 Or App at 433-34. Accordingly, we do not consider the first statement in reviewing the adequacy of the affidavit.

In the second statement, made directly after the first controlled buy, the CI stated that there was much more methamphetamine visible in defendant's residence. The affidavit establishes the CI's direct personal observation as the basis for that information. *State v. Wilson/Helms*, 83 Or App 616, 621, 733 P2d 54, *rev den*, 303 Or 172 (1987) (basis of knowledge satisfied if the affidavit demonstrates that the informant obtained his knowledge firsthand). The affidavit also establishes the CI's reliability with the fact that the CI participated in two controlled buys. *Id.* at 622 (a controlled buy is sufficient to establish an informant's reliability). Because both prongs are satisfied, we may consider that statement in our probable cause analysis.

Next, we turn to whether the affidavit established probable cause to justify issuance of the warrant. Article I, section 9, of the Oregon Constitution permits warrants to issue only upon probable cause. Probable cause "requires the conclusion that it is more likely than not that the objects of the search will be found at the specified location." *State v. Nelson*, 307 Or App 226, 232, 476 P3d 100 (2020). Search warrants are presumptively valid, and it is the defendant's burden to establish that the warrant was defective. *State v. Cazee*, 308 Or App 748, 754, 482 P3d 140 (2021). "We review the question of whether a warrant affidavit establishes probable cause for legal error." *State v. Marmon*, 303 Or App 469, 472, 463 P3d 555 (2020).

Defendant does not contest that the affidavit established the following information: (1) The CI had personally purchased methamphetamine from defendant at an unknown time in the past; (2) defendant sold the CI dealer amounts of methamphetamine in the fall of 2021 and late October 2021; and (3) an unidentified neighbor and the BINET team observed intermittent short-term traffic at defendant's residence. In addition, as noted above, the affidavit also established that the CI saw much more methamphetamine in defendant's residence following the first controlled buy in the fall of 2021. According to defendant, the affidavit merely established probable cause that defendant sold dealer amounts of methamphetamine to the CI on two occasions. He asserts that it did not establish probable cause that he would probably possess more methamphetamine by the time the warrant issued on November 1, 2021, or that he maintained an ongoing drug-trafficking operation out of his house. For the reasons that follow, we disagree.

Because probable cause must exist at the time a warrant is issued, a court must consider whether the facts in the affidavit are too stale to establish probable cause. *State v. Chase*, 219 Or App 387, 393, 182 P3d 274 (2008). Information about drugs is particularly prone to staleness. *Id.* "Nevertheless, information that might otherwise be stale can be refreshed with more recent information that provides a basis for concluding that criminal activity continued at the stated location." *Id.* at 393-94 (internal quotation marks and brackets omitted). Here, there was enough evidence to support an inference of ongoing drug activity from defendant's home. The CI had previously purchased methamphetamine from defendant, saw a large amount of methamphetamine in defendant's home in the fall of 2021, and purchased dealer amounts of methamphetamine from defendant in that time frame. The second controlled buy occurred in late October, shortly before the warrant issued on November 1. Evidence of short-term traffic around defendant's home further provided some indication of the possibility of ongoing drug dealing. As we have reiterated, probable cause is a standard "of probability, not certainty." *State v. Sunderman*, 304 Or App 329, 340, 467 P3d 52 (2020). The information in the affidavit

was sufficient to establish that evidence of drug crimes would probably be found when the warrant was executed.

## B. *Particularity*

We turn now to defendant's particularity arguments.[2] He argues that the warrant and the search category authorizing a search of his cell phones were insufficiently particular. A search warrant must "particularly describ[e] the place to be searched, and the person or thing to be seized." Or Const, Art I, § 9. To satisfy the particularity requirement, a warrant must be sufficiently specific and not overbroad. *State v. Mansor*, 363 Or 185, 212, 421 P3d 323 (2018). A warrant must describe the items to be seized with sufficient specificity to allow the executing officer to identify those items with reasonable effort and to a reasonable degree of certainty. *Id.* The warrant also must not authorize a search that is broader than the supporting affidavit supplies probable cause to justify. *Id.* "We review particularity challenges, as relevant to the denial of a motion to suppress evidence found in a warranted search, for legal error." *Curry*, 336 Or App at 75.

### 1. *Particularity of the cell phone search*

We begin with defendant's challenge to the search category authorizing the cell phone search. Defendant argues that it was insufficiently particular because the time limitation was too broad, and it allowed for a search beyond drug related data. The portion of the warrant at issue reads as follows:

> "Cellular phones belonging to or possessed by Jason Gaskill, specifically drug related cell phone data from August 1, 2021 to the present, including names and numbers contained therein; SIM cards for cellular phones possessed, *all stored data* to include passwords, encryption keys, access codes, SIM passwords, files, phone books, date books, call history, voice call, text messages, other messaging

---

[2] Defendant challenges the warrant's particularity under both the Oregon and United States constitutions. His federal constitutional challenge is based entirely on his arguments under the Oregon Constitution. We reject his federal constitutional argument regarding the cell phone search for the same reasons we reject his state constitutional argument below. *State v. Myers*, 338 Or App 59, 68 n 2, 565 P3d 463 (2025). We do not reach his federal constitutional argument regarding the whole warrant because we reverse on state constitutional grounds.

applications, e-mail, photos, videos, and meta data including but not limited to geographical information."

(Boldface and underscoring omitted; emphasis added.) The warrant then gave examples of drug related cell phone data:

"Messages or text referring to meet locations, drug prices *** drug weights *** or drug type text or code words *** Phone calls, [VoIP] phone calls or similar calling programs to known individuals involved in illegal drug transactions. Photographs or videos which include visible firearms, controlled substances, digital scales, known drug dealers, drug packaging, concealment methods, or bulk currency. Geographical information which shows the cellular phone was at known drug dealing residences, locations or meet locations described in other data obtained from the investigation, suspect or from the cell phone data."

The time limitation in the provision authorized a search for "drug related cell phone data from August 1, 2021 to the present." Defendant argues that the facts in the affidavit do not justify a search going back to August 2021, pointing out that the first controlled buy occurred in the fall of 2021. The state responds that the police had information of defendant's drug dealing dating back before August 2021.

In *Mansor*, the Supreme Court instructed that, with respect to a digital search, when a temporal limitation "is relevant and available to the police, it ordinarily should be set out in the affidavit, and the warrant should include that description." *Mansor*, 363 Or at 218. However, the court cautioned that "analytically, 'temporal limitations' are more accurately seen as a way of identifying with greater specificity the 'what' that is being searched for, rather than as a separate, independently required element, in meeting the particularity requirement." *Id.*

First, as noted previously, we excised the statement in the affidavit from mid-2021 that defendant was transporting methamphetamine from California to Oregon to sell. We do not consider that statement in this analysis. However, the remaining facts in the affidavit establish a reasonable inference that defendant was engaged in ongoing drug sales, such that a search for evidence going back to August 2021 would not be unreasonable. *See State v. Paye,*

310 Or App 408, 416-17, 486 P3d 808 (2021) (concluding that the total lack of a temporal limitation was "not, ultimately, problematic" under the circumstances of the case). The affidavit established that, at some point prior to the first controlled buy in the fall of 2021, the CI had purchased methamphetamine from defendant on their own. BINET had been investigating and surveilling defendant for "several months" before applying for the warrant on November 1, 2021, uncovering circumstantial evidence of continued drug activity. The temporal limitation authorizing a search going back to August 1, 2021, did not "cause[] the search category to be disconnected from the specific crime of investigation." *State v. Turay*, 371 Or 128, 151, 532 P3d 57 (2023) (internal quotation marks omitted). We therefore reject defendant's argument that the temporal limitation was overbroad.

Next, we turn to defendant's argument regarding the scope of the cell phone search. Defendant challenges the "all stored data" provision, arguing that it is untethered to previous temporal and subject-matter limitations put in place before the semicolon. As a result, defendant argues that the provision authorizes an unconstitutional search through all stored data on the phone, not limited to "drug related cell phone data" or the temporal limitation going back to August 2021.

We disagree with defendant. Search warrants are to be read in a "common-sense, realistic, and nontechnical manner," and not necessarily in the most grammatically preferred manner. *State v. Savath*, 298 Or App 495, 501 n 7, 447 P3d 1, *rev den*, 365 Or 722 (2019). Here, defendant argues that the semicolon severs the second half of the sentence from the first. However, a common-sense reading of the provision links the phrase "all stored data" to the temporal and subject matter limitations. Thus, the warrant authorizes officers to search "all stored data" on defendant's cell phones for "drug related cell phone data" dating back to August 1, 2021. Defendant does not appear to argue that the definition of "drug related cell phone data" is insufficiently particular. We also determined that the temporal limitation was not overbroad. We therefore reject defendant's arguments regarding the cell phone search.

### 2.   *Particularity of the warrant in general*

We turn now to the warrant command, which authorized a search for evidence that "may include, but is not limited to" 13 categories of evidence. According to defendant, that command makes the warrant an impermissible general warrant allowing executing officers to seize *any* evidence they deem relevant to a drug crime. In response, the state contends that the search command comports with a "longstanding application of the plain view doctrine to non-digital searches," relying on *State v. Farrar*, 309 Or 132, 151, 786 P2d 161, *cert den*, 498 US 879 (1990), for the proposition that a warrant is sufficiently particular, as a restatement of the plain view doctrine, if it permits a search for any other physical evidence of a particular crime.

We address first the state's argument regarding the plain view doctrine. The Supreme Court explained that "*Farrar* was a case-specific application of a statute (later repealed)" and is "not a blanket endorsement of nonspecific terms in search warrants." *Mansor*, 363 Or at 214. We have previously rejected the state's argument that a search category authorizing a search for "[a]ny other evidence" of defendant's alleged crimes was a permissible restatement of the plain view doctrine.[3] *Curry*, 336 Or App at 88. That search category did not limit the officers' authorization to search and seize only those items they could lawfully seize under the plain view doctrine, which consists of items an officer can seize "from a position where that officer is entitled to be and the incriminating character of the item to be seized is immediately apparent." *Id.* Likewise, the warrant in this case—permitting a search for evidence including but "not limited to" certain search categories—could permit officers to seize items beyond what they could lawfully seize under the plain view doctrine.[4] Therefore, it was not a correct or permissible restatement of the plain view doctrine.

---

[3] As we stated in *Curry*, we "recognize that *Mansor* and its progeny have identified and developed heightened particularity standards for warrants to search for digitally held information." *Curry*, 336 Or App at 80 n 7. We rely, however, on *Mansor*'s "comprehensive discussion of Article I, Section 9, case law and the historical circumstances surrounding the legal framework." *Id.*

[4] We note also that the warrant command in this case was not restricted to *physical* evidence, and in fact, one of the subsequent search categories involved digital evidence. We have expressly held the plain view doctrine inapplicable

Next, we consider whether the warrant was sufficiently particular. For the reasons we discuss below, we conclude that it was not. The purpose behind the particularity requirement "is a prohibition against general warrants whereby administrative officers determine what is and what is not to be seized, to guide the officer to the thing intended to be seized and to minimize the danger of unwarranted invasion of privacy by unauthorized seizures." *State v. Reger*, 277 Or App 81, 90, 372 P3d 26, *rev den*, 359 Or 847 (2016) (internal quotation marks, brackets, and ellipses omitted). The objective of the particularity requirement is that "the search be as precise as the circumstances allow and that undue rummaging be avoided." *Id.* at 91. In *Turay*, the Supreme Court held that a search category allowing a search for "[a]ny other evidence" relating to prostitution-related crimes "failed to describe the evidence sought with *any* specificity."[5] *Turay*, 371 Or at 151 (emphasis in original). Similarly, in *Curry*, we concluded that "the '[a]ny other evidence' search category is not specific enough to prevent 'undue rummaging' by executing officers." *Curry*, 336 Or App at 88. We determined that the authorization to search for "[a]ny other evidence" of the named crime, in addition to broad authorization under several valid, unchallenged search categories, "amount[ed] to a general authorization to rummage through defendant's residence." *Id.* at 89. In contrast, where a "warrant limited police to search for particular types of evidence at a particular location in connection with a specific set of alleged crimes, it was sufficiently particular." *Reger*, 277 Or App at 92.

The warrant in this case failed to describe the evidence sought with sufficient specificity. The warrant authorized a search for evidence in defendant's residence, vehicle, cell phone, or on his person which "may include, but is not limited to" certain listed search categories. By its plain language, the warrant was expressly *not* limited to any

---

to digital searches. *State v. Bock (A169480)*, 310 Or App 329, 340, 485 P3d 931 (2021).

[5] We acknowledge that *Turay* involved a digital data search, which carries a different specificity requirement than searches for physical objects. But we emphasize that the Supreme Court concluded that the search command lacked "*any* specificity—let alone *** as much specificity as reasonably possible under the circumstances." *Turay*, 371 Or at 151 (emphasis in original).

particular types of evidence. The warrant did not provide "clear limitations" on the material subject to search and seizure, which "improperly requires the executing officer to employ discretion in deciding what to search or seize." *State v. Vesa*, 324 Or App 674, 687, 527 P3d 786 (2023) (brackets omitted). The lack of specificity risked "undue rummaging" by executing officers. *Curry*, 336 Or App at 88. We conclude that the warrant was not sufficiently specific, and therefore did not satisfy the particularity requirement of Article I, section 9.

We finally address the appropriate remedy. As noted, defendant entered a conditional guilty plea under ORS 135.335(3) in Case No. 21CR55357, which reserved his right to appeal the trial court's rulings in that case. Having now prevailed on appeal, defendant has the right to withdraw that plea if he so chooses. ORS 135.335(1). If he withdraws the plea, there may be further litigation regarding the scope of the evidence that should be suppressed. Both sides contend that the scope of that suppression should be decided on remand. We agree.

In sum, we conclude that the affidavit established probable cause for the search. Moreover, the search category authorizing the search of defendant's cell phones was sufficiently particular. However, we further conclude that the warrant lacked sufficient specificity and was therefore invalid. The trial court erred in denying defendant's motion to suppress in Case No. 21CR55357. Defendant was sentenced together in both cases, so we remand for resentencing in Case No. 20CR32110. *See Vesa*, 324 Or App at 687 (providing the same remedy in similar circumstances).[6]

In Case No. 21CR55357, reversed and remanded. In Case No. 20CR32110, remanded for resentencing; otherwise affirmed.

---

[6] Of course, if defendant does not withdraw his plea in Case No. 21CR55357, there would not need to be a resentencing in either case.